**8**

Arthur, Dewey AUSMUS, Administrator of the Estate of Goldie C. Ausmus, Deceased, and Arthur Dewey Ausmus, Respondents,

v.

Dallas SWEARINGEN, Appellant.

No. 45354.

Supreme Court of Missouri.

Division No. 2.

Nov. 12, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 10, 1956.

Jayne & Jayne, Kirksville, for appellant.

Stewart & Brown, Edina, Hess & Collins, Macon, for respondents.

BROADDUS, Special Judge.

This action was commenced by the filing of a petition in two counts. In the first count Goldie C. Ausmus prayed damages for personal injuries arising out of an automobile accident which took place near Palisade, Colorado. In the second Arthur D. Ausmus sought damages for loss of services of his wife Goldie C. Ausmus, arising out of the same accident.

On February 11, 1955, plaintiff, Goldie C. Ausmus died, but not as a result of injuries received in the accident. Plaintiff Arthur D. Ausmus, as administrator of the estate of his deceased wife, was substituted as plaintiff in count one. An amended petition was filed on both counts of the petition. Defendant thereafter filed a motion to dismiss count one for the reason that the alleged cause of action did not survive the death of Goldie C. Ausmus. There was also a motion filed to dismiss both counts for failure to state a cause of action. Both motions were overruled and an answer filed by defendant. Plaintiff had a verdict and judgment on the first count for $10,000, and on the second for $2,000. Defendant has appealed.

The facts are: Goldie C. Ausmus, who lived in Edina, Missouri, and the defendant, her son by a previous marriage, were on their way to California to visit relatives when the accident occurred. They left Edina on May 9, 1953 at about 1:00 in the afternoon. From there they drove to Leavenworth, Kansas, where they spent the night with Mrs. Ausmus' sister. They were traveling in a 1952 two-door Willys which was the automobile involved in the accident.

The next morning May 10, the defendant and Mrs. Ausmus got up at about 7:00. They left Leavenworth at approximately 8:00. Defendant was driving. Mrs. Ausmus was on the right side of the front seat.

They proceeded from Leavenworth to the junction of Highways 40 and 24. They turned west on Highway 24 and proceeded on Highway 24 until the accident.

Defendant testified that between 8:00 on the morning of May 10 and noon of that day he did not remember for sure whether or not he made any stops, they may have stopped once. That stop was made for gasoline and they were stopped just long enough to fill up. He said they stopped between noon and 1:00 in the central part of Kansas, for "eats and fuel"; that at that time they were stopped 30 to 45 minutes; that Mrs. Ausmus asked him if she could drive—asked to relieve him. He said that she made this request "two or three times," but that he did not let her drive at all. They did not stop for the purpose of eating and did not get anything to eat between noon and the time they arrived in Buena Vista, Colorado; that between noon and the time they got to the motel in Buena Vista, shortly after midnight, he thought they had stopped "either two or three times" and those stops were just for gas; that each of these stops was just long enough to get fuel, "I would say ten or fifteen minutes."

Defendant also testified that they arrived at Buena Vista between 12:00 and 12:30 at night. They stopped at a place called Stagecoach Inn, about a mile from the motel, to get something to eat, but this place was "closing up and didn't have any coffee or meals, the only things they had left were cold turkey sandwiches"; that he and Mrs. Ausmus each got one of those. These sandwiches were prepared "to go" and they did not get any coffee there. He said they left Stagecoach Inn and went about a mile down the highway to the Settle Motel. By the time they arrived at the motel he had eaten his sandwich; that Mrs. Ausmus wanted to stop there at the motel and rest; that the motel operator showed them a cabin and he agreed to take it.

George E. Settle, the proprietor of the Settle Motel in Buena Vista, testified that late in the evening Mrs. Ausmus came to the door and asked if he had a motel unit; that Mrs. Ausmus said they had driven straight through and that she was simply afraid to have her son drive any further that night. Settle agreed that it was kind of foolish as probably the highways over Tennessee Pass and Leadville would be covered with snow; that he walked with Mrs. Ausmus out to Unit 8 and checked her in; that he stayed around talking to her a few minutes and at that time the defendant came into the cabin. He further testified, without objection, that the defendant was in a "rather surly mood." The witness asked defendant if he had anti-freeze in his car; that defendant replied that he did not, Settle then remarked to defendant that he should either drain his radiator or drive to the corner and have them add some anti-freeze; that defendant replied, "Oh, the hell with it, I think we'll just go on because we are only going as far as Grand Junction anyhow, and we have come this far and we might as well drive the rest of the way." Settle further testified that he then walked back to the motel office and in several minutes Mrs. Ausmus came into the office and asked for her money back, "that the boy had decided to go on." He further testified, without objection, that Mrs. Ausmus "positively did not want to go, she wanted to stay right there, but he wanted to go on." Settle refunded their money and they went on.

Defendant was asked: "In other words, you proceeded on your journey over your mother's protest?" His answer was, "That's right." Defendant stated Mrs. Ausmus wanted to stay at the motel, but he wanted to go on.

Defendant did not drink any water or coffee at the motel, but after they left the motel and had traveled about 150 miles, out of the 200 miles to the scene of the accident, he stopped and fixed something in connection with his license plate and at that time he got a drink of water out of the thermos jug which they had in the car. He testified he did not remember one way or the other whether Mrs. Ausmus had asked him if she could drive or "spell" him between the time

they left the motel and the time of the accident. Mrs. Ausmus estimated that the accident occurred around 5:30 or 6:00 a. m. Defendant estimated that it occurred at 4:30 a. m. on May 11 about 13 miles east of Grand Junction, Colorado; that Grand Junction is about 25 miles east of the Utah State Line. Defendant did all the driving from Leavenworth to the scene of the accident, and drove continuously, except for the times they stopped for gas, to eat, and at the motel.

Defendant testified that he never felt sleepy and had no warning that he was going to go to sleep; that he did not know how the accident happened; that he was awake "just before the accident happened"; that the last thing he remembered before the accident happened was Mrs. Ausmus hollering at him; that at the time she hollered he did not know whether he was awake or asleep; that he did not know what caused the car to go off the road and down the embankment; that he did not know if he was asleep when the car left the road, but he remembered the car leaving the road; after Mrs. Ausmus hollered at him—he could see it, but that shortly before she hollered he did not remember what was taking place. When asked if he was conscious shortly before she hollered, he replied, "I guess not"; that when she hollered she woke him up but by that time it was too late to avoid going off the road.

The car went off the left side of the road down an embankment about 25 feet. At that point the highway was straight and level. From the time the car left the road at the top of the embankment it probably traveled forward 100 feet. The highway was blacktop about 18 or 20 feet wide. The surface of the highway was dry and the visibility was good.

Defendant said that the last time he was conscious before the car started off the road he would estimate his speed at "35 to 40"; that the car did not hit anything on the highway causing it to leave the highway;

that the car did not slide or slip on the highway, that he remembered of; that he had never driven between Buena Vista, Colorado, and the point where the wreck happened, before the day of the accident.

Defendant's first contention is that the trial court erred in failing to direct a verdict for him because plaintiffs failed to offer sufficient evidence to make a case of wilful and wanton misconduct under the guest statute of Colorado. The statute provides that in order for a guest to recover against a driver the accident must have been caused by "negligence consisting of a willful and wanton disregard of the rights of others." Colo.R.S.A.1953, 13–9–1, Vol. 2, p. 454.

No Colorado decision involving facts similar to those appearing in the case at bar has been called to our attention. We have discovered none. The Colorado Supreme Court has, however, had occasion to define the phrase "wilful and wanton disregard." It is said in the case of Pettingell v. Moede, 129 Colo. 484, 271 P.2d 1038, 1042: "One may be said to be guilty of 'wilful and wanton disregard' when he is conscious of his misconduct, and although having no intent to injure anyone, from his knowledge of surrounding circumstances and existing conditions is aware that his conduct in the natural sequence of events will probably result in injury to his guest, and is unconcerned over the possibility of such result." Another guest case in the same court was that of Foster v. Redding, 97 Colo. 4, 45 P.2d 940, 941. In it the court compared the guest statute to the exemplary damage statute, which uses the words "'wanton and reckless disregard.'" C.L.1921, § 6307. It said that those words, in the exemplary damage statute, had been construed to mean: "'If conscious of his conduct and the existing conditions, he (defendant) knew or should have known, that the injury would probably result, the requirements of the statute are met.' * * * The statement applies to 'willful and wanton disregard' as used in the statute before us. There is no material difference."

In a case from the 10th Circuit Court of Appeals, Von Lackum v. Allan, 219 F.2d 937, 938, involving the Colorado Guest Statute the court said: "What constitutes willfulness and wantonness is a question of fact and, since each case must to a large extent stand on its own bottom, decided cases are of little aid in resolving this question."

Guest statute cases involving a factual situation where the driver went to sleep fall into two categories, generally. In the first are a few cases in which the courts permit the guest to recover and make no mention of the necessity of the driver having had a warning or premonitory symptom of sleepiness. Two such cases are Curtis v. Curtis, 58 Idaho 76, 70 P.2d 369, and Manion v. Waybright, 59 Idaho 643, 86 P.2d 181. Each held that under the Idaho statute, which required a showing of "gross negligence" or "reckless disregard", the plaintiff made a submissible case. Other such cases are collected in 28 A.L.R.2d at page 53, Sec. 27.

The other category, and the numerical majority, are those cases in which the courts permit the guest to recover but say that in order to do so there must be some evidence upon which a jury could find that the driver had a warning or premonitory symptoms of sleepiness. In those cases the ultimate question is—what evidence does it take to warrant a finding by the jury that the driver did have such a warning or premonitory symptoms? There is no clear line of demarcation between the instances in which it has been held that such evidence did exist and those in which it did not—the courts frequently remarking, and accurately so, that there is no rigid test to be applied to the factual situations, consequently the previous cases are of little value and that each case must be decided upon its own peculiar facts. Jones v. Pasco, 179 Va. 7, 18 S.E.2d 258, 138 A.L.R. 1385; 28 A.L.R.2d 12–104.

In Marks v. Marks, 308 Ill.App. 276, 31 N.E.2d 399, 401, the plaintiff was the defendant's brother. They started from South Haven, Michigan, having driven there from Chicago, Illinois, on the first day of their journey, at 9:30 a. m. and, taking turns driving, went to Detroit. Defendant transacted some business and they then went to a movie. They left Detroit about 5:00 or 5:30 p. m. Defendant was driving and did drive until they got back to South Haven, at about 2:30 the next morning. After they had left Detroit, at about 9:30 p. m., plaintiff suggested that they stop for the night and continue the trip the next morning. Defendant objected to that plan so they continued on the trip. Before they got to South Haven, defendant was arrested for speeding. At one point, between South Haven, Michigan, and Chicago, defendant took a curve at about 75 miles an hour, so the plaintiff took the wheel. Plaintiff continued to drive to Chicago. After driving into Chicago they ran out of gasoline at about 5:00. They waited for a gasoline station to open, bought gasoline and defendant started driving north on Cicero Avenue. The place where they ran out of gas was 147th Street. The defendant said that the last thing he remembered was passing 140th Street. It is not shown exactly where the accident happened. The attendant at the gasoline station said that both plaintiff and defendant appeared tired and sleepy. On these facts the court held that the plaintiff made a submissible case under "willful and wanton misconduct" as used in the Illinois guest statute. S.H.A.Ill. ch. 95½, § 58a.

In Secrist v. Raffleson, 326 Ill.App. 489, 62 N.E.2d 36, 37, the plaintiff and defendant had been in Aurora, Illinois, until about 2:00 a. m., at which time they started for the home of the plaintiff. The defendant was driving. The car ran into the abutment of a bridge and injured both parties, and sometime thereafter defendant died. Apparently his deposition was not taken before he died. "Under the evidence act the plaintiff was an incompetent witness." The only evidence referred to in the opinion was admissions made by the defendant to people who visited him while he was in the hospital. Those people testified that defendant told them " 'the accident was caused by his falling asleep * * * he went to sleep, and

that was how they got hurt. * * * I went to sleep· * * * he fell asleep while driving the car about three or four o'clock in the morning ;* * * he had fallen asleep while he was driving the car.' " On this evidence the court held that plaintiff made a submissible case of wilful and wanton misconduct under the Illinois guest statute.

The Marks and Secrist cases, cited above, make it clear that in order to comply with the requirement that there be a warning or premonitory symptom, it is not necessary that the defendant admit before the accident occurred he had felt sleepy or drowsy or that he had already fallen asleep once. On the other hand, these cases, and the other cases cited in 28 A.L.R.2d 73, Section 43, make it clear that plaintiff makes a submissible case if, from all of the evidence, reasonable minds might differ as to whether or not the defendant actually realized, or an ordinary, intelligent and considerate person should have realized that if he continued to drive without rest, sleep or some sort of stimulant to his mental faculties, some sort of injury would probably result to his guest, and that the defendant's conduct was such that it indicated that he was unconcerned over that possibility.

"If," says the Colorado Foster case supra [97 Colo. 4, 45 P.2d 941], " 'conscious of his conduct and existing conditions; he (defendant) knew or should have known, that the injury would probably result, the requirements of the statute are met.' " A Michigan case, Boos v. Sauer, 266 Mich. 230, 253 N.W. 278, construing the statute of that state which contains the phrase "wilful and wanton misconduct" said that in order to make a submissible case: "There must be an appreciation of the danger of falling asleep or *circumstances which would cause a reasonably prudent person to appreciate it and proceeding in defiance of results.*" (Emphasis ours.) · And, says the Connecticut case of Potz v. Williams, 113 Conn. 278, 155 A. 211, 212: "It is but the plainest common sense to recognize that there are circumstances under which the operation of an automobile upon the highway by one who is or should be aware of the likelihood that sleep will overtake him could reasonably be held to constitute reckless misconduct." ...

In the instant case the evidence was that defendant got up at 7:00 on the morning of May 10th; that he started driving at 8:00; that the accident did not happen until near 6:00 the following morning; that during that time defendant stopped once in the morning, once at noon, and "either two or three times" between noon and 12:30 that night; that Mrs. Ausmus asked him two or three times if she could drive so he could rest; that besides the plate lunch which he ate at noon on May 10th he had no other food except a cold turkey sandwich at about 12:30 a. m. on May 11th. He had no coffee or other stimulant. The evidence also showed that defendant started to spend the night at the motel in Buena Vista (from which the jury could reasonably infer that he recognized his need of rest). The testimony was that Mrs. Ausmus "positively did not want to go" on with the journey that night from Buena Vista. Defendant testified that he proceeded on the journey, from Buena Vista to the scene of the accident, over Mrs. Ausmus' protest. This protest, or the repeated offer to relieve him at the wheel, was, of itself, a strong warning to defendant that if he continued to drive without rest or sleep he would go to sleep. To say the least, reasonable minds might differ as to whether or not the knowledge of these facts and circumstances constituted a warning or premonitory symptom that defendant would probably doze off or go to sleep. The jury could also have found that defendant knew that if he did doze off or go to sleep it was "probable" that Mrs. Ausmus would be injured, and it is an understatement to say that they also could have found that defendant was "unconcerned over" that "possibility." In our opinion, the trial court did not err in submitting the case to the jury.

Defendant's second point is that the trial court erred in allowing the cause of action

alleged in count one of plaintiff's petition to be revived.

As stated, the cause of action for personal injuries to Goldie Ausmus occurred on May 11, 1953, in Colorado. Suit was instituted by her on March 29, 1954, praying for damages for these injuries. On August 24, 1954, defendant filed an answer to that petition. On February 11, 1955, Goldie Ausmus died. And on May 24, 1955, the court ordered the revival. Defendant contends that under the law of Colorado a cause of action for personal injuries dies with the plaintiff and therefore upon the death of Mrs. Ausmus her *cause of action did not survive,* and thus the court erred in allowing the *pending action to be revived* in the name of the administrator.

Section 247, Chap. 176 of the Colorado Statutes C.R.S. '53, 152–1–9, is as follows: "All actions in law whatsoever, save and except actions on the case for slander or libel, or trespass for injuries done to the person, .* * * shall survive to and against executors, administrators, and conservators."

As pointed out in 42 A.L.R.2d at page 1171, the terms "survival of a cause of action" and "revival of a pending action" are clearly distinguishable. At page 1172 the annotator says: "By the weight of authority, * * * the revivability of a pending action as a matter of procedure, is governed by the law of the forum, * * *." And at page 1183 this appears: "It has been generally held that the question of revival, after the death of a party of a 'pending action' which was commenced during the lifetime of the person in whose favor or against whom the cause of action accrued, is governed by the law of the forum."

In 1 Am.Jur. p. 113, it is said: "The right to revive an action for personal injuries, commenced before the death of the person injured, is to be determined by the law of the place where the action is pending, and not by the law of the state where the injury occurred and the cause of action arose."

In the case of Baltimore & O. R. Co. v. Joy, 173 U.S. 266, 19 S.Ct. 387, 388, 43 L.Ed. 677, the cause of action accrued in Indiana and suit was filed in a state court in Ohio. It was later removed to the federal court in Ohio. Thereafter the plaintiff, Hervey, died. His administrator sought to revive. The defendant's objection to the revival was that under the law of Indiana, where the cause of action accrued, the cause of action "dies with the person of either party" and that under the law of Indiana it was immaterial that the suit had been filed prior to the plaintiff's death. The court's opinion delivered by the distinguished Kentuckian, Mr. Justice Harlan, said:

"It is scarcely necessary to say that the determination of the question of the right to revive this action in the name of Hervey's personal representative is not affected in any degree by the fact that the deceased received his injuries in the state of Indiana. The action for such injuries was transitory in its nature, and the jurisdiction of the Ohio court to take cognizance of it upon personal service or on the appearance of the defendant to the action cannot be doubted. *Still less can it be doubted that the question of the revivor of actions brought in the courts of Ohio for personal injuries is governed by the laws of that state, rather than by the law of the state in which the injuries occurred."* (Emphasis ours.)

Other cases to the same effect are Page v. United Fruit Co., 1 Cir., 3 F.2d 747; Luster v. Martin, 7 Cir., 58 F.2d 537; Gordon v. Chicago, R. I. & P. R. Co., 154 Iowa 449, 134 N.W. 1057; Austin's Adm'r v. Pittsburg, C. C. & St. R. Co., 122 Ky. 304, 91 S.W. 742, 5 L.R.A.,N.S., 756; Grant v. McAuliffe, Cal.App., 255 P.2d 819, 823, par. 5.

The case of Orr v. Ahern, 107 Conn. 174, 139 A. 691, 692, contains this language: (It is dictum, but, nevertheless, sound reasoning.) "Had the plaintiff begun his action here before the death of the intestate, under this statute, [Connecticut] after the death of the intestate, it would have been revived. When our court had assumed jurisdiction

of a cause of action originating in New York, it was beyond the power of the state of its origin to destroy our jurisdiction of the action. The locus delicti determined the existence of the cause of action. The locus fori determined the remedy. *The place of injury could not* by legislative or judicial action taken subsequent to our acquiring jurisdiction *take away our jurisdiction over the cause of action which was good when we assumed it, for that would give the place of the injury an extraterritorial right to control litigation here. Neither would the death of the defendant's intestate pending the action have deprived our court of the right, upon proper application, to have revived the action, since our statute gives our court that right.*" (Emphasis ours.)

■ From the above it is clear that the law of Missouri governed the question of revival. And our law is that pending actions for personal injuries do not abate upon the death of the plaintiff. They can be revived by the administrator of the plaintiff's estate. Section 537.020 RSMo 1949, V.A.M.S.; Longan v. Kansas City R. Co., 299 Mo. 561, 253 S.W. 758, 761. In the Longan case it was said: "If Mrs. Longan had brought the suit, and thereafter died before it was tried in the circuit court, the action might have been revived under section 4231 R.S.1919, in the name of the administrator, and prosecuted by him, * * *." Sec. 4231, R.S.1919, is now Section 537.020 RSMo 1949, V.A.M.S.

The cases of Ormsby v. Chase, 290 U.S. 387, 54 S.Ct. 211, 78 L.Ed. 378, and Burg v. Knox, 334 Mo. 329, 67 S.W.2d 96, relied upon by defendant, are not in point. In both of those cases the defendant died *before* suit was filed. Neither case passed upon the question of whether or not a *pending action* could be revived. In the Ormsby case the court said: "But when she [plaintiff] sued she had no claim to enforce. * * * As there had been no suit, no question of revivor is presented." The court then cites the Baltimore & Ohio R. Co. v. Joy case, supra. We rule the point against defendant.

Defendant's last point is that the trial court erroneously admitted certain testimony. He has not favored the court with an argument developing his contentions. We have, however, considered them and find that no prejudicial error was committed. The case was well tried.

The judgment should be, and is, affirmed.

EAGER, P. J., and STORCKMAN, J., concur.

LEEDY, J., not sitting.