No. 18,572.

HAROLD C. HODGES, SR., ET AL. *v.* CLIFFORD GARY LADD, ET AL.

(352 P. [2d] 660)

Decided May 2, 1960.   Rehearing denied June 13, 1960.

144

Mr. Edward J. Byrne, for plaintiffs in error.

Messrs. Houtchens & Houtchens, Mr. John J. Dooley, for defendants in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

The parties appear here in the same order as they appeared in the trial court and we refer to them as plaintiffs and defendants or by name.

The plaintiffs are the father and mother of Connie Kay Hodges (herein referred to as Connie), age seventeen years, who died as the result of injuries received September 17, 1956, when a car in which she was riding as a guest, driven by the defendant Ladd, title to which was registered in the name of the defendant, Frances C. Withrow, left U. S. Highway 287 at a point about fourteen miles northwest of Fort Collins, Colorado, and crashed into a dirt fill on a ditch bank.

The plaintiffs' complaint charges the following acts of negligence or conduct giving rise to liability by the named defendants:

Ladd—drove in a negligent manner consisting of a wilful and wanton disregard of the rights of others.

Gary Richard Withrow (herein referred to as Gary) — the sixteen-year-old son of the defendants, Frances G. Withrow and Ray T. Withrow, being in possession of the car involved with permission of his parents, "did negligently allow Clifford Gary Ladd" to drive the car.

Frances G. Withrow and Ray T. Withrow, being the

owners of the car involved, "a family purpose" car, were "grossly negligent" in allowing Gary to control the operation of the car, they knowing that he was not competent to do so.

The defendants' answer admitted the accident and death of Connie, admitted that Ladd was driving, denied the other allegations of the complaint and set up as affirmative defenses that: (1) Connie was a guest and could not recover for injuries and plaintiffs cannot recover for her death; (2) that Connie was guilty of contributory negligence which precludes a recovery by plaintiffs, and (3) that Connie assumed the risks attendant upon the trip and no recovery can be had for her death.

Trial was to a jury and at the close of plaintiffs' case a motion for a directed verdict for the defendants was sustained and judgment dismissing plaintiffs' complaint was entered. Plaintiffs are here by writ of error seeking reversal.

The evidence is very brief and there are no conflicts or inconsistencies therein.

So far as necessary to our conclusion, only the following facts need be considered.

At about 9:00 p.m., Sunday, September 16, 1956, Connie, Ladd and Gary were in Elk Mountain, Wyoming, and at that time went to a dance and there remained until the dance ended at about 2:00 a.m., Monday, September 17, 1956. From the dance the car involved was driven by one of the three to the home of Connie's sister in Elk Mountain where Connie had spent the previous night and where she was let off to pick up her clothes. The boys drove to Gary's brother's house in Elk Mountain, where Ladd and Gary picked up their clothes. The boys then (exact time not disclosed by the record) returned for Connie and she entered the car and the three of them started the trip from Elk Mountain to Fort Collins, Colorado, where all three resided.

Gary drove from Elk Mountain to Rock River (dis-

tance or time consumed not disclosed by the record). During this period Ladd slept. At Rock River Gary turned the driving over to Connie, who drove to Diamond Horseshoe, "just this side of Laramie." (Distance or time consumed not disclosed by the record). Both Ladd and Gary slept during this period.

Connie stopped the car at the Lucky Diamond, "a big restaurant just outside of Laramie," there Connie and Ladd went into this restaurant and had coffee; Gary remained in the car asleep. After coffee (time consumed not disclosed by the record) Ladd took over the driving, during which Connie and Gary both slept. Ladd drove at a speed of about fifty miles per hour on Highway No. 287, which has a posted speed limit of sixty miles per hour. He failed to negotiate a moderate curve and drove off the highway as above stated. He was asleep at the wheel at the time of the crash. Connie and Gary also were asleep.

The only evidence in the record as to Ladd's condition with reference to being sleepy and asleep is found in his statement made to Patrolman Robinson, who investigated the accident, and in Ladd's testimony given when called by plaintiff for cross-examination. This testimony is as follows:

PATROLMAN ROBINSON:

"A. I talked to the Ladd boy at the hospital; as I recall the conversation, I asked him what was the cause of the accident and he stated that he had went to sleep. Q. All right. Did you question him as to whether or not his — what was his condition prior to the time he went to sleep? A. I questioned him on that and as I recall, I didn't make a note on that, but as I recall, he said that he was feeling drowsy before that, or sleepy, but he thought it was so close to home that he could make it on home."

DEFENDANT LADD:

"Q. Now when did you first become drowsy and sleepy prior to the accident? A. Oh, I would say about

four or five miles the other side of the Forks Hotel. Q. All right. And you heard the Officer testify I presume didn't you? A. Yes. Q. When you became drowsy and sleepy why didn't you stop? A. Well, I didn't think I was that tired. Q. You thought like the Officer said you told him, is that correct, that you thought you could make it in to home? A. Yes sir."

There is nothing in the record to indicate how far it is from Laramie to the Forks Hotel (where Ladd first became drowsy), or from the Forks Hotel to the point of the accident. The accident occurred at about 6:30 A.M., September 17, 1956, about four and one half hours after the parties left the dance.

In sustaining the motion for a directed verdict, the trial judge held that the evidence presented did not show negligence or misconduct of a wilful or wanton character such as is required to overcome the inhibitions against recovery set up by the guest statute.

The trial judge, in sustaining the motion, stated:

"The statute requires negligence consisting of a wilful and wanton disregard of the rights of others, as a type of misconduct to permit the case to be taken out of the guest statute; the defendant has cited many cases to the effect that drowsiness and sleepiness is gross negligence, a term that is not recognized in Colorado; Colorado cases stating that ordinary, simple or gross negligence, or the four forms of negligence recognized in some places, are not recognized in Colorado, but are recognized only as ordinary negligence, so that we must then determine whether or not the going to sleep is the wilful and wanton disregard of the rights of others, or if it is that type of act; the Defendant Ladd while on the witness stand testified that he first became drowsy about four or five miles the other side of the Forks Hotel and in response to the question 'Why didn't you stop?' he answered 'Well, I didn't think I was that tired.' That is the act which we must determine whether or not is wilful and wanton. Reading from the case of Hollenback v. Fairbanks, in

132 Colo. page 216, at page 220, the statement is made and I quote — 'The issue under the second claim comes squarely within and is determined by our recent decision in the case of Pettingell v. Moede, 129 Colo. 491, where we said that to wilfully and wantonly disregard the rights of others requires a consciousness of heedless and reckless conduct by which the safety of others is endangered. For the purpose of properly construing this statute, ordinary and simple negligence should be considered as resulting from a passive mind, while a wilful and wanton disregard expresses the thought that the acts of which complaint is made was the result of an active and purposeful intent. To be wilful and wanton there must be some affirmative act, purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly without regard to consequences or of the rights and safety of others, particularly the guest. Wilful act means voluntary, by choice, intentional, purposeful. Wantonness signifies a higher degree of culpability in that it is wholly disregardful of the rights, feelings and safety of others.' "

█ This language from the case of *Hollenback v. Fairbanks,* quoted by the trial judge, is particularly applicable to the facts in the case at bar. However, we conclude that the quoted language, at least insofar as Ladd's rights and duties are concerned, sanctions, rather than precludes, submission of the matter to the jury for its determination.

Also applicable is the following language from *Clark v. Hicks,* 127 Colo. 25, 252 P. (2d) 1067:

"In the instant case, defendant knowingly was flirting with danger without necessity compelling him to take the chance. Here, on a dark night, while driving his car at a high rate of speed, he attempted to pass a slow moving truck on an upgrade, drove his car off on the wrong side of the road, ran off the road, came back upon it while traveling on two wheels, turned his car over and slid into the Webster car, all due to 'taking a chance'

and flirting with danger when there was no occasion to do so."

In construing our guest statute, the 10th Circuit Court of Appeals, in *Von Lackum v. Allan,* 219 F. (2d) 937, followed the holding of this court in *Clark v. Hicks,* supra, and said:

" * * * What constitutes wilfullness and wantonness is a question of fact and, since each case must to a large extent stand on its own bottom, decided cases are of little aid in resolving this question. * * *."

■ Ladd, up to the time he fell asleep, was doing exactly what he intended to do. His conduct in driving was not the result of an untoward or unanticipated event; his conduct was wilful (defined by Webster as "self-determined," "voluntary," "intentional"). Ladd's admitted drowsiness was his premonitory symptom of impending sleep — a warning which he saw fit to intentionally and wilfully disregard, as evidenced by his statement that he thought "it was so close to home that he could make it on home." Ladd took the needless chance of falling asleep while driving; he and all drivers are chargeable with knowledge that driving while asleep will probably lead to an accident.

■ The general rule is stated in 5A Am. Jur. 572, §540:

" * * * Generally speaking, if it appears that the driver of an automobile has been without sleep for a considerable period of time and has experienced symptoms of the approach of sleep, the fact that he continues to drive under such circumstances has been held to manifest a wilful and wanton disregard for the safety of others within the meaning of the applicable guest statute. Failure to heed symptoms constitutes the test of wilful or wanton misconduct."

This court has not had occasion to determine whether continuing to drive after becoming drowsy constitutes such wilful, wanton and intentional conduct as to remove a case based on such facts from the inhibitions of the

guest statute precluding recovery. However, the Supreme Court of Missouri, in *Ausmus v. Swearingen,* 296 S.W. (2d) 8, did have such problem before it. In that case the defendant had been driving continuously for about twenty-four hours before the accident which occurred near Palisades, Colorado. Defendant testified that he never felt sleepy and had no warning that he was going to sleep; however, he did fall asleep and drove off the road, just as did Ladd. The Supreme Court of Missouri interpreted the Colorado guest statute and affirmed a jury verdict which awarded damages to the guest. The court said:

"Guest statute cases involving a factual situation where the driver went to sleep fall into two categories, generally. In the first are a few cases in which the courts permit the guest to recover and make no mention of the necessity of the driver having had a warning or premonitory symptom of sleepiness. Two such cases are Curtis v. Curtis, 58 Idaho 76, 70 P. (2d) 369, and Manion v. Waybright, 59 Idaho 643, 86 P. (2d) 181. Each held that under the Idaho statute, which required a showing of 'gross negligence' or 'reckless disregard,' the plaintiff made a submissible case. Other such cases are collected in 28 A.L.R. (2d) at page 53, Sec. 27.

"The other category, and the numerical majority, are those cases in which the courts permit the guest to recover but say that in order to do so there must be some evidence upon which a jury could find that the driver had a warning or premonitory symptoms of sleepiness. In those cases the ultimate question is — what evidence does it take to warrant a finding by the jury that the driver did have such a warning or premonitory symptoms? There is no clear line of demarcation between the instances in which it has been held that such evidence did exist and those in which it did not — the courts frequently remarking, and accurately so, that there is no rigid test to be applied to the factual situations, consequently the previous cases are of little value and that

each case must be decided upon its own peculiar facts. Jones v. Pasco, 179 Va. 7, 18 S.E. (2d) 258, 138 A.L.R. 1385; 28 A.L.R. (2d) 12-104."

In *Potz v. Williams,* 113 Con. 278, 155 Atl. 211 (1931), it is said:

"As a guest in the car the plaintiff could only recover if * * * the defendant was guilty of reckless conduct * * *. This statute * * * requires proof by a guest * * * that the accident was 'caused by his heedless and his reckless disregard of the rights of others, and in substance that it constituted wanton misconduct * * *.' * * * It is but the plainest common sense to recognize that there are circumstances under which the operation of an automobile upon the highway by one who is or should be aware of the likelihood that sleep will overtake him could reasonably be held to constitute reckless misconduct. * * *. Ordinarily the decision of the question must be one of fact for the jury and, if the conclusion they reach is reasonable in the light of the evidence and the inferences they may properly draw, it must stand."

In *Carvalho v. Oliveria,* 305 Mass. 304, 25 N.E. (2d) 764, the Supreme Court of Massachusetts stated:

" * * * Without undertaking to lay down a rule that falling asleep is always evidence of gross negligence, at least it maybe said that the danger of driving while heavy with drowsiness is so extreme and so self-evident that one who, with knowledge that he is in that condition, persists in driving without making the necessary effort fully to arouse himself can be found to be grossly negligent. * * *."

A very recent case, wherein the facts are very similar to the facts here, squarely holds that one who persists in driving while sleepy and aware of the danger of falling asleep is guilty of gross negligence as used in the guest statute. *Newell v. Riggins,* 197 Va. 490, 90 S.E. (2d) 150 (1955). Therein the court said:

"It is true that the defendant said he didn't feel him-

self getting sleepy and that it came all at once, under questioning by his counsel. He also said at other times that he 'dozed' as he proceeded on the highway. There is a recognized difference between dozing and sleeping. In common use and ordinary acceptation, 'dozing' is a semi-conscious condition — a condition of being half-asleep — usually the first phase of sleep, a fully unconscious condition.

"Not making any colorable attempt to explain why he dozed or went to sleep, the defendant created an issue of fact regarding due care, and the question whether he exercised a smaller amount of watchfulness and circumspection than the circumstances required of a person of ordinary prudence and was guilty of *an utter disregard of prudence* was, in view of the principles stated and the evidence, one for the jury." (Emphasis supplied.)

The trial judge was in error in directing the jury to return a verdict in favor of the defendants.

The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with the views herein expressed.

MR. JUSTICE DOYLE specially concurs.

MR. CHIEF JUSTICE SUTTON, MR. JUSTICE KNAUSS and MR. JUSTICE DAY dissent.

MR. JUSTICE DOYLE specially concurring:

I agree with the conclusions and reasoning of the majority opinion, and the present remarks are offered for the purpose of supplementing its reasoning.

The majority opinion considers the events which preceded the injury starting from 9:00 P.M. on Sunday, September 16, 1956, at Elk Mountain, Wyoming. It appears from this statement that the parties involved in this injury attended a dance at Elk Mountain which continued until 2:00 A.M. on Monday, September 17,

1956, and that they drove the rest of the night, each taking his turn at the wheel, until the fatal accident occurred at 6:30 A.M. some 15 miles from their destination, Fort Collins, Colorado. It should also be pointed out that the transaction had its inception at 7:00 A.M. on September 16, at which time the defendant left his home at Fort Collins and drove to Elk Mountain, Wyoming. The evidence shows that he went hunting there during the afternoon of the 16th and that he returned from this around 6:00 P.M. The boys who had accompanied him to Elk Mountain then returned to Fort Collins. The defendant, however, decided to stay over for the dance and this commenced about 9:00 P.M. The dance continued for five hours, until 2:00 A.M., and after that the defendant, in company with the others, returned to the places where they had been staying, picked up their clothing and equipment and started the return trip. On this return drive, Gary was the driver to Rock River, Wyoming, at which place Connie, the deceased, took over and drove to Laramie. The defendant had apparently slept during these first two stages and drank coffee before departing from Laramie. The record does not disclose the distance which had been covered just prior to the accident. We are told that the defendant became drowsy some 5 miles north of the Forks Hotel.

I consider significant the fact that the defendant had been active for nearly 24 hours and that the only period during which he slept occurred in the car during the drive from Elk Mountain to Laramie. Why is this important? Because the issue here is the state of mind of the defendant and this state of mind can be appraised only in terms of the surrounding facts and circumstances. The facts recited above are such as to place a reasonable man on notice that the hazard of an occurrence such as the present one existed to the level of being a strong probability.

The standards for distinguishing between ordinary

negligence and wanton conduct or reckless misconduct are clearly set forth in the Restatement on Law, Torts, §500, quoted with approval in *Coffman v. Godsoe,* decided May 9, 1960. Comment (g) of that section distinguishes wanton conduct from negligence consisting of inadvertence, incompetentness or unskillfulness on the basis that reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others or with knowledge of facts which would disclose this danger to any reasonable man. Applied to the present case, this means that even though the defendant did not have an actual appreciation of the extent of the hazard he did have clear notice or knowledge of facts which would disclose this danger to any reasonable man. Comment (g) supra also distinguishes the form of negligence consisting of intentionally doing an act with knowledge that it contains a risk of harm from reckless conduct on the ground that in the area of reckless conduct the risk is substantially more serious than in the case of negligence. In order for the conduct to be reckless the result must be probable.

The conclusion seems inescapable that the case is one for the jury to evaluate. There is present here not only a consciousness or awareness of drowsiness or sleepiness, but in addition, the fact of intense tiring activity over a period of 24 hours, all of which adds to the awareness of the hazard of harm. Thus, when the defendant became cognizant of his drowsiness he had to realize that the risk of his going to sleep was a real one. When he thereafter elected to drive his car at 50 miles per hour, it was at least a question for the jury as to whether he had knowledge of facts which would disclose the danger of going to sleep and missing a turn to any reasonable man. Or stated differently, the evidence was sufficient to warrant submission to the jury of the question whether a strong probability existed that if he drove he would go to sleep and fail to manipulate a turn.

Judged by either the surrounding circumstances and constructive notice approach or the actual awareness of a strong probability approach, I am of the opinion that the evidence here is sufficient to warrant its submission to the jury.

The defendants in the case at bar placed strong reliance on our decision in *Pettingell v. Moede,* 129 Colo. 484, 271 P. (2d) 1038. In that case, the defendant had been engaged in driving a jeep over an icy, snow-packed road, Berthoud Pass. He was descending the pass on the East side of the Divide and in the course of this was driving the jeep sufficiently fast so that he was sliding around corners. The plaintiff in that case warned him. The result of the warning was that he became somewhat angry and continued his course of conduct. It was there held that this was simple negligence. The trial court in the present case relied on this decision in holding the conduct in question to be simple negligence. It strikes me that in the *Pettingell* case the evidence was sufficient to warrant submission of the case to the jury on the question of whether the defendant was guilty of wanton conduct. Therefore, in my opinion, the holding in the *Pettingell* case and the viewpoint of the majority of the Court in this case cannot be reconciled. The rules and principles pronounced in the *Pettingell* case are not different from the standards of the case at bar, but the application of those rules to the facts in the Pettingell case is entirely different from the present holding. Insofar as *Pettingell v. Moede* is out of harmony with the present case it ought to be overruled.

I join in the decision and the order of the Court reversing the judgment and remanding the case for a new trial.

Mr. Justice Knauss dissenting.

I dissent. Everyone must concede that the sketchy

156

case attempted to be made by plaintiffs, presents an extremely weak set of facts upon which to predicate liability under our consistent holdings in guest cases.

This court has, on numerous occasions, construed the term "willful and wanton disregard" as used in our guest statute, C.R.S. '53 13-9-1. The leading case is *Pettingell v. Moede,* 129 Colo. 484, 271 P. (2d) 1038, where the court, speaking through the late lamented Justice John R. Clark, stated:

"* * * One may be said to be guilty of 'willful and wanton disregard' when *he is conscious of his misconduct, and* although having no intent to injure anyone, from his knowledge of surrounding circumstances and existing conditions *is aware that his conduct in the natural sequence of events will probably result in an injury to his guest, and is unconcerned over the possibility of such result. * * *"* (Emphasis supplied.)

The majority does not expressly overrule this fundamental and well established definition but apparently prefers to ignore it. In *Antonen v. Swanson,* 74 S. D. 1, 48 N.W. (2d) 161 (1951), the trial court directed a verdict for defendant at the close of plaintiff's case because there was no evidence of "willful and wanton" conduct. There the evidence disclosed that defendant driver had a malarial condition, and suffered from loss of sleep and felt groggy, tired and sick, but merely told plaintiff that he was tired, and there was no other indication that his driving was negligent. The host fell asleep and his guest was injured. The Court affirmed the judgment of the trial court directing a verdict for defendant on the issue of willful and wanton conduct. The following language of the court is particularly applicable here and noticeably similar to the language of the *Pettingell* case, supra:

"A careful review of the record leads us to the conclusion that there is no evidence that the driver of the truck was guilty of willful and wanton misconduct. * * * We adopted our guest statute from Michigan. In Boos vs.

Sauer, 266 Mich. 230, 253 N.W. 278, 279, the Supreme Court of that state had occasion to determine whether a truck driver falling asleep while driving was liable under the statute. The court said: 'Gross negligence requires willful or wanton misconduct. (Citation.) *To constitute gross negligence in falling asleep while driving there must have been such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of consequences.* There must be an appreciation of the danger of falling asleep or circumstances which would cause a reasonably prudent person to appreciate it and proceeding in defiance of results. It has been held that prior warning may be by way of having before gone to sleep or dozed off.' *The evidence showed that the driver in that case became drowsy, but there was no such prewarning as to indicate that his continuing to drive amounted to reckless disregard of consequences.*" (Emphasis supplied.)

Again in *Barrell v. Wessel,* (La. App. 1953) 65 S. (2d) 818, the trial court, in a case involving an accident in Kansas, construed the Kansas guest statute, entered judgment for defendant at the conclusion of all evidence and the Louisiana Court of Appeals affirmed the trial court in the following language:

"The factual aspects which are urged in support of plaintiff's rights are that the defendant Wessel had been without sleep for a period of some twenty-two hours at the time of the accident; that his two passengers fell asleep immediately upon beginning the return trip from Salina; that defendant had consumed one or two bottles of beer during the course of the evening, and that the use of the car heater with little, if any, ventilation was conducive to a feeling of drowsiness. On the basis of these facts it is urged that Wessel should have known that he was in danger of falling asleep.

\* \* \*

"Despite the persuasiveness of the argument we think

it must yield to the apparently overwhelming weight of Kansas jurisprudence which leads to an opposite conclusion.

\* \* \*

"In the course of the opinion the court cited a number of Kansas cases dealing with the construction of the phrase 'gross and wanton negligence.' *An examination of these cases convinces us that the Kansas courts have construed the phrase to comprehend willful conduct coupled with a realization of an imminent danger to another resulting from such conduct, together with an indifference to such injury.* (Citations.) (Emphasis supplied.)

\* \* \*

"We can only consider that the use of the phraseology employed by the Kansas legislature indicated a clearly evidenced intent and purpose to restrict the recovery by guests to instances in which the host was guilty of active negligence in such superlative degree as would barely fall short of a willful and purposeful intent to injure."

The court held as a matter of law, that the stated facts did not constitute gross and wanton negligence.

In *Perkins v. Roberts*, 272 Mich. 545, 262 N.W. 305, the accident occurred at 1 o'clock in the morning when defendant fell asleep at the wheel. The evidence disclosed that defendant had become drowsy and stopped the car for a smoke to wake up. He felt refreshened and continued to drive. It was held that this was not evidence that defendant continued to drive in reckless disregard of premonitory symptoms. To the same effect is *Butine v. Stevens*, 319 Mich. 176, 29 N.W. (2d) 325.

The majority opinion cites *Carvalho v. Oliveria*, 305 Mass. 304, 25 N.E. (2d) 764, and *Newell v. Riggins*, 197 Va. 490, 90 S.E. (2d) 150 (1955) to support a reversal of the judgment for defendant. The Massachusetts and Virginia law is easily distinguished from our own as is

shown in *Antonen v. Swanson,* supra, where the court stated:

"Plaintiff also cites Blood v. Adams, 269 Mass. 480, 169 N.E. 412, and Jones v. Pasco, 179 Va. 7, 18 S.E. (2d) 258, 138 A.L.R. 1385. In Massachusetts gross negligence constitutes great negligence or the absence of slight diligence and does not necessarily partake of the nature of deliberate or intentional wrong. Cook v. Cole, 273 Mass. 557, 174 N.E. 271. Virginia has adopted the Massachusetts rule as indicated by the Jones case. Under the guest statute in this state as we have indicated, willful and wanton misconduct is something more than negligence of any sort. The cases cited, while apparently supporting plaintiff's contention, are not in point because of the difference in criterion of liability in guest cases. The trial court did not err in holding as a matter of law that Swanson was not guilty of willful and wanton misconduct."

To paraphrase the South Dakota court, under the guest statute in Colorado, willful and wanton disregard is something more than a degree of negligence and the Virginia and Massachusetts decisions can have no effect under our decisions. As stated in *Pettingell v. Moede,* supra:

"Under the guest statute, the facts must show more than negligence. To willfully and wantonly disregard the rights of others requires a consciousness of heedless and reckless conduct by which the safety of others is endangered. For the purpose of properly construing this statute, ordinary or simple negligence should be considered as resulting from a passive mind, while willful and wanton disregard expresses the thought that the action of which complaint is made was the result of an active and purposeful intent. Willful means voluntary; by choice; intentional; purposeful. Wantonness signifies an even higher degree of culpability in that it is wholly disregardful of the rights, feelings and safety of others. * * *"

160

There is no evidence in the instant case of willful and wanton conduct as that phrase has been frequently construed in this jurisdiction. Ladd testified that he didn't think he was drowsy enough to fall asleep. Yet the majority states that "Ladd took the needless chance of falling asleep while driving; he and all drivers are chargeable with knowledge that driving while asleep would probably lead to an accident." There is not one scintilla of evidence in the record disclosing that Ladd was conscious of falling asleep, nor is there evidence showing that he was "unconcerned over the possibility" that such conduct would result "in an injury to his guest." The evidence discloses no more than simple negligence "resulting from a passive mind." What evidence shows the accident to be "the result of an active and purposeful intent * * * wholly disregardful of the rights, feelings and safety of others?" I submit that nothing of the sort appears in this record.

The only case relied on by the majority is *Ausmus v. Swearington,* (Mo.) 296 S.W. (2d) 8, wherein the Missouri court, in a case involving a Colorado accident, construed the Colorado guest statute according to the Virginia holding rather than the Colorado decisions. The Missouri court chose to ignore the existing fundamental Colorado law as stated in the *Pettingell* case.

The law in this jurisdiction as it has existed in the past and as it should continue to exist in the future is convincingly set forth in the *Pettingell* case, supra, and the language there is strikingly similar to that found in *Ansback v. Greenberg,* (Ky.) 256 S.W. (2d) 1 (1953) where the court states:

"Most courts hold that merely falling asleep at the wheel of an automobile, in the absence of facts which ordinarily would create an appreciation of such danger, is not gross negligence. A typical case is *Boos v. Sauer,* 266 Mich. 230, 253 N.W. 278, 279, where it was said: 'It is also the weight of authority that the mere falling asleep is not gross negligence.' In Richards v. Parks, 19

Tenn. App. 615, 93 S.W. 2d 639, 645, the Tennessee Court said: '* * * and, of course, where falling asleep is relied upon as gross negligence, as must be the case here, it would be necessary that the driver was aware of the danger of falling asleep and, in utter forgetfulness and disregard of, and indifference to the legal rights and safety of the injured party, continued to drive the car, proximately resulting in the injury complained of.' To the same effect are *Bushnell v. Bushnell,* 103 Conn. 583, 131 A. 432, 44 A.L.R. 785; Cooper v. Kellogg, 2 Cal. 2d 504, 42 P. 2d 59; Gilliland v. Harris, 25 Ala. App. 549, 150 So. 184; Diamond State Tel Co. v. Hunter, 2 Terry 336, 41 Del. 336, 21 A. 2d 286; Kaplan v. Kaplan, 213 Iowa 646, 239 N.W. 682."

In the present case the evidence discloses that defendant had slept for a considerable period prior to taking the wheel, that he was drowsy but didn't feel tired enough to interfere with his taking the wheel for the short distance to Fort Collins, after his two companions had each driven the car while defendant slept. From this meager testimony can it be inferred that defendant was "conscious of his misconduct * * * and * * * from his knowledge of surrounding circumstances and existing conditions is aware that his conduct in the natural sequence of events will probably result in an injury to his guest, and is *unconcerned* over the possibility of such result * * *" as announced in the *Pettingell* case? I think not. This is another of those hard cases which I am afraid make bad law.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE DAY concur in this dissent.