No. 23749.

ELIZABETH A. BRIOLA *v.* MABLE T. ROY.
(459 P.2d 288)

Decided September 29, 1969. Rehearing denied October 20, 1969.

98

Zarlengo, Mott and Carlin, Reed I. Winbourn, for plaintiff in error.

Frank A. Bruno, Robert E. Goodwin, for defendant in error.

*In Department.*

Opinion by Mr. Justice Day.

The defendant in error, Mrs. Mabel T. Roy, was the plaintiff in the district court in an action for personal injuries arising from a one-car automobile accident. The defendant, Mrs. Elizabeth A. Briola, the driver of the car, denied negligence and alleged that the relationship existing between Mrs. Roy and herself was that of a driver and guest; that there was no evidence of the willful and wanton conduct (gross negligence) required to be shown before a guest can recover. C.R.S. 1963, 13-9-1. A jury verdict was for the plaintiff in the amount of $37,500, and to the judgment entered thereon defendant brings writ of error.

The accident in question occurred near Turlock, California, on June 30, 1966. The two women were close friends. Mrs. Briola invited plaintiff to accompany her on a car trip from Denver to the west coast to visit Mrs. Briola's relatives. A side trip with Mrs. Briola's sister, Mrs. Anna Fisher, was taken from Fresno, California, to Lake Tahoe. The accident occurred on the return trip on highway 99, a four-lane roadway. The car traveling in a southerly direction, upon rounding a curve, jumped the outside curb and traveled some 474 feet in a wide arc over private property, hitting a wooden post, and finally returned to the center of the highway. Mrs. Roy — a passenger in the front seat — was thrown from the car about 150 feet from where the car came to rest and sustained a serious concussion which rendered her unconscious for approximately ten days. After initial treatment in a hospital near the scene of the accident, she was removed by air ambulance to St. Luke's Hospital in Denver, where surgery was subsequently performed. She

was permanently disabled and subsequently confined to a nursing home.

As grounds for seeking reversal, defendant advances four assignments of error:

I. The court should have ruled as a matter of law that the plaintiff was a "guest"; therefore Instruction 7 concerning the question of whether the plaintiff was a "guest" or "passenger" submitted by the court to the jury was improper.

II. The evidence in this case does not support the finding that Mrs. Briola was guilty of "willful misconduct" as defined by the Guest Statute.

III. The trial court erred in permitting Robert C. Jones, the police officer who investigated the accident, to give his opinion that Mrs. Briola fell asleep.

IV. The trial court erred in permitting the plaintiff to submit nursing home expenses already incurred and nursing home expenses to be incurred in the future to the jury, because it was not proven that they were the proximate result of the wrong committed or a necessary expense as a result of the accident.

I.

We hold that there was sufficient evidence of negligence consisting of the willful disregard of the rights of others to support the verdict so it is immaterial whether plaintiff was a guest or paying passenger. We therefore do not discuss the evidence touching on Mrs. Roy's status.

II.

At the time of the denial of defendant's motion to dismiss the court refused to rule as a matter of law that the defendant was not guilty of willful and wanton misconduct, stating the evidence presented a question for the jury to decide. A review of the facts relating to defendant's conduct reveals the correctness of the trial court's ruling.

The events are not in serious dispute. The parties, accompanied by defendant's sister, Mrs. Fisher, traveled in

the defendant's car from Fresno, California, to Lake Tahoe, Nevada, arriving in the late afternoon after a six-hour drive. The defendant did all the driving. After registering at a motel the evening hours were spent by the parties at Reno, Nevada, and the night hours visiting the casinos, clubs and shows at Lake Tahoe. The ladies retired at approximately 11:00 p.m. During the night the plaintiff developed an annoying cough which disturbed the defendant's sleep and kept her awake. At 7:00 a.m. the women started the return trip to Fresno. The defendant again undertook to do all of the driving, much of which was over the mountain roads of Nevada. The day was very bright and the temperature was in the 90's. The car was not equipped with air conditioning.

The defendant was wearing prescription sun glasses, but notwithstanding this fact she was having difficulty with her eyes. She stated that they were burning very badly; that she "never had them burn like that." After driving approximately three hours she was required to stop and rest them because they "burned real bad." The rest came under a shade tree by the side of the road and lasted ten minutes. Nonetheless, the defendant suggested that the trip be continued. After driving a little bit further than 15 miles the ladies at approximately 10:30 a.m. stopped for a belated breakfast at a roadside restaurant two or three miles north of the city of Turlock, California, the place of the accident. This second stop lasted one-half hour during which time the defendant said to her sister: "Just as soon as we get through Turlock, let's rest again, because my eyes burn so bad." She testified that they burned just before the accident, but that the burning did not impair her vision. She further testified that she did not feel sleepy. The accident occurred within a few minutes and within three miles from the restaurant. The defendant was approaching the north boundary of Turlock, within a 35 mile per hour speed zone at a speed of 45 miles per hour. She does not remember or recall the accident, nor was she able to

explain its cause, except that in explaining her actions to the investigating officer on the scene she said: "I could have dozed I guess. I really don't know. It happened so fast." No other explanation of the cause of the accident was ever given; the testimony of the investigating officer and a witness to the accident reveals that in their opinion defendant's falling asleep while driving was the cause of the accident.

■ We cannot say as a matter of law that Mrs. Briola's conduct was a willful and wanton disregard of the rights of others, constituting the negligence required to bar her from the protection of the guest statute. From the facts reasonable minds might differ as to the conclusion, and the question was properly presented to the jury.

From the evidence it is manifest that the trier of fact could find that the defendant was conscious of the probable results of her continued driving under circumstances that admittedly and substantially impaired her ability to drive; and further that her continuing to drive in the face of these anatomical warnings constituted intentional disregard for the probable consequences of her acts.

■ Moreover it is clear from the facts that the jury could infer that Mrs. Briola, who had no sleep the night before and who had the symptoms described, fell asleep at the wheel. Recent Colorado cases hold that in accidents caused by a driver going to sleep while operating a motor vehicle, the question of whether any forewarning of danger from drowsiness is sufficient to meet the requirements of willfulness and wantonness under the guest statute is a question for the jury. *Parker v. Foxworthy,* 154 Colo. 455, 391 P.2d 358; *Hodges v. Ladd,* 143 Colo. 143, 352 P.2d 660. *See also Baker v. Williams,* 144 Colo. 470, 357 P.2d 61; 38 Dicta 102.

*Hodges v. Ladd, supra,* is a leading case in this jurisdiction concerning the question of whether a defendant driver is guilty of driving in a negligent manner consisting of a willful and wanton disregard of the rights of his guest when he continues to drive after becoming

conscious that he is drowsy and sleepy. In that case the driver continued to drive at a speed of about 50 miles per hour, fell asleep, crashed into a dirt fill on a ditch bank causing the death of one of his passengers. This court said:

"Ladd, up to the time he fell asleep, was doing exactly what he intended to do. His conduct in driving was not the result of an untoward or unanticipated event; his conduct was willful (defined by Webster as 'self-determined,' 'voluntary,' 'intentional'). Ladd's admitted drowsiness was his premonitory symptom of impending sleep — a warning which he saw fit to intentionally and willfully disregard, as evidenced by his statement that he thought 'it was so close to home that he could make it on home.' Ladd took the needless chance of falling asleep while driving; he and all drivers are chargeable with knowledge that driving while asleep will probably lead to an accident."

■ In guest statute cases involving a factual situation where the driver fell asleep, liability has been upheld wherein there was some evidence from which a jury could find that the driver had a warning or premonitory symptoms of sleepiness. Again, to quote from *Hodges v. Ladd, supra:*

"* * * There is no clear line of demarcation between the instances in which it has been held that such evidence did exist and those in which it did not — the courts frequently remarking, and accurately so, that there is no rigid test to be applied to the factual situations, consequently the previous cases are of little value and that each case must be decided upon its own peculiar facts. * * *"

### III.

■ The defendant contends that the trial court erred in permitting Robert C. Jones, the police officer who investigated the accident, to state in an answer to a hypothetical question that in his opinion the cause of the accident was that Mrs. Briola fell asleep while driving.

The defendant challenges the admission of Jones' expression of opinion upon the grounds that expert opinion is not admissible when the subject matter is within common knowledge of members of the jury. *McNelley v. Smith,* 149 Colo. 177, 368 P.2d 555; *Blackburn v. Tombling,* 148 Colo. 161, 365 P.2d 243. Plaintiff relies on *Bridges v. Lintz,* 140 Colo. 582, 346 P.2d 571, to conclude that the opinion testimony of Jones under the circumstances present in this case is admissible. The question is admittedly a close one, but one which we are not called upon to decide because the record reveals that the defendant on cross-examination of Sgt. Jones elicited the same opinion from the investigating officer by questioning him on defendant's physical condition, to which he answered, "Apparently asleep." Moreover, the defense on cross-examination of an eyewitness to the accident, Mr. Goodwin, elicited testimony that in his lay opinion the defendant had fallen asleep. Defendant herself admitted that she may have dozed. In this state of the record, even if it is said to be error to admit the testimony on direct examination, the defendant cannot successfully claim prejudice when the same testimony was twice elicited by defendant on cross-examination of witnesses.

IV.

■ Defendant contends that the jury should not have been allowed to consider a statement of expenses in a nursing home in the sum of $5891.57 as part of plaintiff's damages because of insufficient medical proof that the expenses were proximately incurred as the result of the accident.

Without detailing the non-disputed severity of Mrs. Roy's injuries, and the intensive medical treatment which she required after the accident, it is clear from the evidence that after her discharge from the hospital she was not able to attend to her own physical needs as she had done before the accident. She required constant nursing care. At the time of her placement in the nursing home

plaintiff was unable to walk without assistance; was unable to bathe; unable to dress and unable to attend to her usual and ordinary physical requirements without assistance. It is not disputed that her infirmity was the direct result of injuries sustained in the accident. Further, this nursing assistance remained necessary and constant up to and including the time of the trial. Under such circumstances it is not necessary to produce evidence that she had been ordered by her physician to be sent to the home. Lay judgment would indicate such care as the alternative to expensive private nurse care in the home. For the foregoing reasons we consider the defendant's contention to be without merit.

Judgment affirmed.

MR. JUSTICE PRINGLE, MR. JUSTICE KELLEY and MR. JUSTICE HODGES concur.