No. 24738

**Jack A. Martin v.
The People of the State of Colorado**
(495 P.2d 537)

Decided April 10, 1972.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Kenneth J. Russell, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, E. Ronald Beeks, Assistant, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE PRINGLE.

Jack A. Martin, plaintiff in error, was convicted of vehicular homicide and sentenced to the state penitentiary. From that judgment he brings writ of error here. He will hereinafter be referred to either by name or as defendant.

Although some of the circumstances leading to this case are controverted, the following facts are undisputed. On September 14, 1969, defendant's motor vehicle, a Corvette Stingray, travelling east on U.S. Highway 40 near the Lookout Mountain turnoff, collided with a west-bound Rambler driven by Mrs. Sarah Campbell. This collision resulted in the immediate death of Mrs. Campbell's 21-month old child, who was a passenger in the Rambler. At the point of impact with defendant's automobile, Mrs. Campbell was driving uphill in the passing lane of the two-lane roadway going west. At this point, the downhill east-bound lane was a single lane. The west-bound double lane and the east-bound single lane were separated by double yellow lines with a staggered white line in between, designating a no-passing zone. It is agreed by both sides that at the time of the collision Martin's Corvette had gone across the double yellow lines and was well within the west-bound lane of which Mrs. Campbell was driving.

Defendant was charged with vehicular homicide in violation of 1965 Perm. Supp., C.R.S. 1963, 13-5-155(1). He thereupon entered a plea of not guilty, waived his right to a jury, and proceeded to trial to the court upon the merits. At the trial, Officer John Williams of the Colorado State Patrol, who was the first law enforcement official to report to the scene of the accident, testified that there were several traffic warning signs west of the accident which posted a speed limit at the vicinity of the accident of 50 miles per hour, and which cautioned east-bound drivers of approaching curves and an intersecting highway. He also noted that he had passed the scene of the accident several minutes before the accident occurred, and that at that time traffic was "extremely heavy" on both sides of the highway. An eyewitness to the accident, Mrs. Rusty Legate, testified that she was in a restaurant at the top of the hill looking out at the highway.

She said she was watching Mrs. Campbell's Rambler come up the hill when suddenly she heard a "shoosh" and saw the sports car coming down the hill. She said that all four wheels of the sports car were on the wrong side of the double yellow lines. She estimated the defendant's speed at 60-65 miles an hour at the time he struck the Rambler. She also testified that there was other traffic proceeding eastward in the correct lane at the time of the accident.

Finally, defendant Martin was called to the stand. While he claimed that he had only been driving 50 miles per hour and that he hadn't noticed a double yellow line on the road, he did admit he knew a double yellow line meant a "no-passing zone," that he was driving on the wrong side of the road at the time of the accident, and that traffic was "quite heavy" when he was driving down the hill towards Mrs. Campbell's Rambler. It was apparent from his testimony that he had been in the wrong lane for at least three-fourths of a mile prior to the collision.

After both sides rested, the trial court made a finding that defendant was guilty beyond a reasonable doubt. Judgment was then entered against Martin on the charge of vehicular homicide. On the hearing for the motion for new trial, the trial judge characterized the defendant's conduct as "willful and wanton disregard."

Defendant raises two points which he contends require reversal. First, he claims that the trial court did not apply the correct legal standard in determining whether defendant had violated the provisions of the Colorado vehicular homicide statute. Second, defendant contends that the evidence presented by the People was insufficient as a matter of law to convict him of the crime of vehicular homicide. We disagree with both of these contentions and affirm.

I.

Defendant asserts that before he can be convicted of vehicular homicide, the evidence produced at trial must demonstrate the presence of a "wanton *and* willful" disregard of the rights of others. In support of this proposition he cites a number of cases arising under Colorado's involuntary

manslaughter, criminal negligence, and guest statutes which test a defendant's conduct by a "wanton *and* willful" standard. The wanton *and* willful standard, however, is not applicable in a case dealing with Colorado's vehicular homicide statute. This statute, 1965 Perm. Supp., C.R.S. 1963, 13-5-155(1), makes it a felony for any person to cause the death of another by operating any motor vehicle in a "reckless" manner. The term "reckless," in turn, is specifically defined in C.R.S. 1963, 13-5-31(1) to mean "any person who drives any motor vehicle in such a manner as to indicate *either* a wanton *or* willful disregard for the safety of persons or property." (Emphasis added). It is clear from the face of this statute that the People do not have to prove, as defendant argues, *both* a wanton and willful disregard for others. One charged with vehicular homicide may be convicted of that charge if at the time of an accident resulting in a death he was driving his automobile in either a wanton or willful manner.

II.

 The next question for us to determine, then, is whether sufficient evidence was introduced at trial to satisfy the requirements that the driving be such as to indicate "wanton" or "willful" disregard for the safety of persons or property. It is a well established rule of this Court that an attack on the sufficiency of the evidence will not result in reversal of a judgment by a trial court sitting as a trier of fact where there is competent evidence in the record to support the findings of fact made by the trial judge. *Baker v. People,* 176 Colo. 99, 489 P.2d 196; *People v. Renfrow,* 172 Colo. 399, 473 P.2d 957; *St. Louis v. People,* 120 Colo. 345, 209 P.2d 538. While the testimony here is conflicting, there is competent evidence in the record offered by the People to sustain a finding that defendant's driving was at least such as to constitute a wanton disregard for the safety of others at the time of the accident with Mrs. Campbell.

 One may be said to be guilty of wanton behavior when, although the defendant may not have deliberately intended to injure anyone, he consciously chooses a danger-

ous course of action which to a reasonable mind creates a strong probability that injury to others will result. *Steeves v. Smiley,* 144 Colo. 5, 354 P.2d 1011; *Coffman v. Godsoe,* 142 Colo. 575, 351 P.2d 808. *See also* Restatement (Second) of Torts § 500 and Special Note and comment (g) thereunder; and *F. Harper and F. James, The Law of Torts,* § 226 at 1214. That there was testimony to the effect that defendant was in the wrong lane for at least three-tenths of a mile prior to the collision; that there was heavy traffic in both lanes; and that at the time of the accident defendant was driving at excessive speeds on the wrong side of the double yellow "no-passing" lines, is sufficient evidence upon which a trier of the facts could have concluded that the defendant's conduct was in wanton disregard of the safety of others.

The judgment is affirmed.

MR. JUSTICE DAY, MR. JUSTICE HODGES and MR. JUSTICE KELLEY concur.