## No. 18,904.

HAROLD W. STEEVES, ET AL. *v.* REX L. SMILEY.

(354 P. [2d] 585)

Decided August 22, 1960.    Rehearing denied September 12, 1960.

Mr. LOWELL WHITE, Mr. WALTER A. STEELE, for plaintiffs in error.

Mr. DARWIN D. COIT, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFFS in error, plaintiffs below, seek review of a judgment in favor of the defendant in error, defendant below, setting aside a verdict in favor of plaintiffs.

The parties will be referred to as they appeared in the trial court. The complaint of plaintiffs contains three claims. The first seeks recovery for the wrongful death of plaintiff's son, an occupant of a car being driven by defendant, and resulting from the alleged negligence of defendant consisting of a wilful and wanton disregard of the rights of others. The second claim seeks damages for medical expenses (paid by Steeves) resulting from injuries to Jerry W. Alsop who was a passenger in the car of defendant and who was injured. In the third claim, Jerry Alsop, suing through plaintiff Steeves, his next friend, seeks damages for his own injuries. Like Claim 1, the second and third claims allege wilful and wanton conduct on the part of defendant.

The jury returned a verdict in the amount prayed for, which was $10,000.00 on the first claim, and in the amounts of $287.01 and $2,000.00 respectively on the second and third claims. Following receipt of the verdicts, the court granted the motions of defendant for directed verdicts.

On the date of the accident, August 10, 1956, at about 9:30 P.M., the defendant was 16 years of age, and had obtained his driver's license on his 16th birthday, two months before. The other occupants of the car, decedent Steeves, Alsop, and Roberta Dahl, were about the same age. The vehicle was a 1946 Chevrolet with a rebuilt motor. The accident occurred on Highway 287 just south of Lafayette, Colorado, near the Louisville turnoff. It occurred while defendant, driving north on Highway 287, was passing other cars. The immediate cause would appear to have had its inception in defendant's appre-

hension that a car he was passing was about to make a left turn into the Louisville road. He was on the left side of the two-lane, two-way road and suddenly pulled the wheel to the left and into the ditch on the west side of the highway. The car traveled some distance in the ditch, and finally skidded sideways into a power pole, bounced off that and at last came to rest against another pole. The decedent's body came to rest some distance from the second pole.

Due to defendant's alleged loss of memory and consequent inability to furnish any explanation as to what occurred, the ultimate issue in the case turns largely on circumstantial evidence. On the night of August 10, 1956, defendant and the others first went to the Valley Drive-In Theatre, but did not stay there and after visiting another amusement place for a brief time drove out Federal Boulevard on the above mentioned highway. Defendant's memory served him only to this point. He was unable to describe any of the subsequent events, at least at the trial, although in a statement made to one of the officers soon after the injuries, he was able to furnish a somewhat more detailed version. To the patrolman he said that he was driving the vehicle, that he did not know how fast he was going; that he turned into the ditch because he believed that the vehicle he was passing was about to make a left turn.

Although the surviving passengers were unable to testify to defendant's exact rate of speed, both attested to the fact that he was going very fast. Both of them warned defendant two or three times that he was going too fast and the deceased also warned him and asked him to slow down. Notwithstanding this defendant persisted in driving fast, in passing cars, and in weaving in and out of traffic. The physical circumstances also provide mute testimony as to his excessive speed in the circumstances. The car tracks extended 64 feet on the left or west side of the road after the car left the paved portion, to the Louisville road, and then across that road a dis-

tance of 22 feet plus 10 feet to the point where it went into a side skid. This latter movement continued for 44 feet to the power pole. This impact was so great that it broke the pole and the cross bars. It then spun in an arc and moved an additional 55 feet where it came to rest against a second power pole. The body of the decedent was 55 feet from the wreckage. Whether he was thrown from the car after the first or final impact is not clear.

In urging reversal of the judgment, plaintiffs call attention to the high speed; to the passing of other cars on the approach to the Louisville intersection; to the weaving in and out of the line of traffic and to the warnings given by the passengers, and argue that this evidence was sufficient to warrant submission of the issue of wilful and wanton conduct to the jury and was adequate to support their determination that defendant was guilty of such conduct.

Defendant's position, both in his brief and in oral arguments, proceeds on the premise that there is a dearth of direct evidence to establish excessive speed and to explain the accident in terms of wrongful conduct (either negligent or wanton) on the part of the defendant. He adopts the position that the circumstances are inconclusive and that the verdict was therefore based on conjecture.

We are unable to accept this latter thesis because the circumstances, together with the witnesses' observations as to speed, sufficiently support the inference that the accident resulted from defendant's knowingly pursuing a reckless course of conduct. On the issue of circumstantial evidence, see *Snedden v. Summer*, 138 Colo. 144, 330 P. (2d) 530. Circumstantial support of a contrary inference is not enough in the present posture of the case, the jury having already rejected the defendant's version.

The standards applicable to such determination are familiar, having been pronounced in a long line of decisions starting with *Millington v. Heidloff*, 96 Colo. 581,

45 P. (2d) 937, and continuing to our recent decision in *Hodges v. Ladd,* 143 Colo. 143, 352 P. (2d) 660. The trial court's determination was, of course, rendered prior to the *Hodges* case and it also predated *Coffman v. Godsoe,* 142 Colo. 575, 351 P. (2d) 808, *Vogts v. Guerrette,* 142 Colo. 527, 351 P. (2d) 851, and *Taylor v. Welle, et al.,* 143 Colo. 37, 352 P. (2d) 106.

The ultimate issue in such cases is whether defendant's misconduct constitutes inadvertance or inattentiveness, or on the other hand, whether he is shown to be guilty of wilfully and intentionally pursuing a course of conduct so highly hazardous that it can be said that he realized the existence of a strong probability that harm would result. In the case at bar we find a combination of factors which serve to bring the case within the area of "negligence consisting of a wilful and wanton disregard of the rights of others." It is not the high speed alone which justified submission of the cause to the jury. The speed, coupled with the darkness of night, the presence of other traffic, the persistent passing of cars on a single lane two-way highway, plus prior remonstrance of excessive speed being given, renders the evidence legally sufficient to warrant submission to the jury.

In *Coffman v. Godsoe,* supra, we paraphrased the *Restatement of Torts,* Section 500, and said:

"Thus the controlling factor in distinguishing intentional conduct from reckless or wanton conduct is the degree of certainty or probability that the harm will result. If the threat of harm exists to the extent of 'strong probability,' the conduct is reckless or wanton. If, on the other hand, the conduct threatens the result to the degree of 'substantial certainty,' it is regarded as intentional.

"The difference between the described types of conduct and ordinary negligence is apparent. In the latter the threatened result is not a strong probability. Nor does it involve 'a conscious choice of a course of action

either with knowledge of the serious danger * * * or with knowledge of facts which would disclose this danger * * *.' "

In *Hodges v. Ladd,* supra, in holding that continuing to drive after the driver had become drowsy was wilful and wanton, it was said:

"Ladd, up to the time he fell asleep, was doing exactly what he intended to do. His conduct in driving was not the result of an untoward or unanticipated event; his conduct was wilful (defined by Webster as 'self-determined,' 'voluntary,' 'intentional'). Ladd's admitted drowsiness was his premonitory symptom of impending sleep — a warning which he saw fit to intentionally and wilfully disregard, as evidence by his statement that he thought 'it was so close to home that he could make it on home.' Ladd took the needless chance of falling asleep while driving; he and all drivers are chargeable with knowledge that driving while asleep will probably lead to an accident."

■ Thus where one consciously chooses a dangerous course of action with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result, his conduct is wanton. The decision of a driver to travel at high speed and to pass other cars at night on a two-way highway and to pursue this course despite repeated warnings from his passengers that he was driving too fast, brings him within the above standards.

In the case at bar, the jury could have concluded that the defendant's highly hazardous course was pursued by him with knowledge that tragic consequences were highly probable. Thus it was a case for jury determination and the court's action in directing a verdict for defendant was erroneous. See *Ferguson v. Hurford,* 132 Colo. 507, 290 P. (2d) 299; *Snedden v. Summer,* supra; cf. *Gravitt v. Sloggett,* 132 Colo. 254, 287 P. (2d) 274.

Accordingly, the judgment is reversed and the cause

remanded to the trial court with directions to reinstate the verdict and enter judgments thereon.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.