Franklin POTTER, Plaintiff,

v.

**NATIONAL HANDICAPPED SPORTS, Defendant.**

Civ. A. No. 93–B–1650.

United States District Court,
D. Colorado.

April 25, 1994.

Richard Cummins, Aspen, CO, for plaintiff.

Frank R. Kennedy, Daniel R. McCune, Cooper & Kelley, P.C., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This case is before me on cross-motions for summary judgment. Plaintiff Franklin Potter (Potter), although he moves for partial summary judgment, is not requesting judgment as a matter of law. Instead, he seeks a determination that the exculpatory contracts which he executed do not preclude his claim against defendant National Handicapped Sports (NHS) as a matter of law. NHS moves for summary judgment contending that there is no dispute of material fact and that it is entitled to judgment as a matter of law. The issues are adequately briefed and oral argument will not materially aid their resolution. Jurisdiction exists under 28 U.S.C. § 1332. I hold that the Insurance Waiver and Release of Liability (liability waiver) is a valid exculpatory contract and it encompasses Potter's claim for relief in this case. Accordingly, NHS's motion will be granted.

### I.

This action arises from a skiing accident at Aspen Highlands ski area on March 31, 1992. Potter, a handicapped skier, was injured while competing in the National Handicapped Downhill Championships. NHS sponsored this event. Potter contends that his injuries were caused by the NHS's negligence. *See* Joint Stipulated Plan and Schedule for Discovery, p. 1. Specifically, Potter alleges that a race official was negligently standing on or near the race finish line and that the official's presence caused him to fall and fracture his hip. *Id.*

### II.

 Summary judgment is appropriate if the pleadings, affidavits and depositions "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. *Board of Education v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather the party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### III.

The facts, with disputes resolved in Potter's favor, are as follows. Potter began skiing competitively in 1970. He has won gold, silver, or bronze medals in most of the races in which he has competed. On three separate occasions, he won the National Handicapped Ski Championships.

Over a month before the March race, Potter read, and signed two release agreements, namely, the liability waiver and a registrant's release (collectively the releases). There are no terms in either release that he did not understand. In addition, the registrant's release is similar to other releases that Potter had signed for previous races. Furthermore, Potter has served as a volunteer for the New England Handicapped Sports Association, a subdivision of NHS. In that capacity, he assisted in race participant registration and was responsible for the collection of the necessary releases from the participants.

### IV.

Potter contends that the releases are invalid. First, he claims that these exculpatory agreements are void as a matter of public policy because of the nature of NHS's services to handicapped individuals and its duty to the public. Second, he asserts that the agreements are neither clear nor unambiguous. He further argues that even if the releases are valid as to a negligence claim, they are inapplicable here because NHS was willfully and wantonly negligent. In response, NHS asserts that the exculpatory agreements completely bar Potter's claim in this case.

In this diversity action, the resolution of this matter turns on Colorado law. *Day v. Snowmass Stables, Inc.,* 810 F.Supp. 289, 293 (D.Colo.1993). The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court. *Id; Jones v. Dressel,* 623 P.2d 370, 376 (Colo. 1981). Exculpatory agreements have long been disfavored. *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, 783 (Colo.1989). Because of the their one-sidedness, exculpatory agreements are strictly construed against the drafter. *Day,* 810 F.Supp. at 293. Colorado looks to four factors in determining the validity of an exculpatory contract: 1) the existence of a duty to the public; 2) the nature of the service/activity performed; 3) whether the contract was entered into fairly; and 4) whether the intention of the parties is expressed in clear and unambiguous language. *Jones,* 623 P.2d at 376.

Potter raises arguments directed at the first, second and fourth *Jones* factors. As for the first factor, Potter contends that NHS breached its duty to the public by failing to keep the race course free from obstacles. In *Jones,* the court made it clear that, for an exculpatory agreement to fail under the first factor, the party seeking exculpation must be engaged in providing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. *Id.* at 376–377. Here, as in *Jones,* Potter was injured while participating in a recreational activity. As such, by definition and common sense, it is neither a matter of great public importance nor a matter of practical necessity. *Bauer v. Aspen Highlands Skiing Corp.,* 788 F.Supp. 472, 474 (D.Colo.1992). Therefore, there is no public duty that prevents enforcement of these agreements.

■ Potter also argues that the second *Jones* factor is not satisfied here. He contends that the releases are invalid because handicapped racers have, at best, a limited range of options available in which to participate in competitive sporting events. While this may be true, I disagree with Potter's contention that ski racing for handicapped skiers rises to the level of an essential service contemplated by Colorado law. Accordingly, the nature of NHS's services fail to invalidate the exculpatory agreements as a matter of law.

As for the fourth factor, Potter argues that the releases do not clearly and unambiguously release NHS from liability for the claim alleged in this case. Potter executed two separate exculpatory contracts with different language. Consequently, to determine whether the fourth test is met, I examine the language in each release. The registrant's release provides, in relevant part:

> By my signature below, I am stating that I fully understand that skiing is an inherently hazardous sport and that there is an even higher risk of personal injury when training or racing on downhill ... courses. I am hereby stating that I understand that courses and conditions vary and will change with skier use, weather changes, and other factors resulting in bare spots, variations in snow, ice, and terrain along with bumps, ruts, moguls, stumps, forest growth, and debris, rocks and many other hazards. I also recognize that rocks, trees, snowmaking pipes, lift towers, and other hazards are almost always adjacent to such courses.

> . . . . .

> By my signature below, I do hereby release and agree to hold harmless and indemnify the directors, officers, shareholders, agents, servants, and employees of Aspen Highlands, National Handicapped Sports ... and their insurance carriers from any and all claims, actions, or damages without any limitation whatsoever, whether consisting of person injury ... that results in any way from my participation in the U.S. Disabled Ski Championship.

■ Under Colorado law, the use of the specific term "negligence" is not required for an exculpatory agreement to shield a party from claims based on negligence. *Heil Valley Ranch*, 784 P.2d at 785. The inquiry is whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed. *Id.* In determining that the parties intended to extinguish liability and that their intent was clearly and unambiguously expressed in the release, the *Heil Valley Ranch* court noted that: 1) the agreement was written in simple and clear terms that were free from legal jargon; 2) it was not inordinately long and complicated; 3) the plaintiff indicated in her deposition that she understood the release; 4) the first sentence of the release specifically addressed a risk that described the circumstances of the plaintiff's injury; and 5) the plaintiff was an experienced rider and therefore the risk that a horse could rear and injury her was reasonably foreseeable to someone with her experience. *Id.*

■ In this case, the registrant's release does not contain the term "negligence." The waiver is, however, written in simple and clear terms that are free from legal jargon. It is not inordinately long and complicated. In addition, Potter stated in his deposition that there are no terms in the release that he did not understand. On the other hand, the release does not specifically address a risk that describes the circumstances of Potter's injury. In fact, all of the express on-course hazards listed are those which occur "naturally" such as bumps, ruts, moguls, stumps, forest growth, debris, and rocks. Consequently, I cannot conclude, as a matter of law, that in executing the registrant's release it was the parties' clear and unambiguous intent to extinguish NHS's liability for the claim alleged in this case.

■ Notwithstanding this conclusion, my analysis continues because Potter executed two releases. In relevant part, the liability waiver provides:

> In consideration of being allowed to participate in ... NATIONAL HANDICAPPED SPORTS program ... I ... the undersigned:

> Acknowledge and fully understand that I ... will be engaging in activities that involve risk of serious injury ... which might result only from my own actions,

inactions or negligence of others, the rules of play, or the condition of the premises or any equipment used. Further, that there may be other risks not known to me or nor reasonably foreseeable at this time.

Assume all the foregoing risks and accept personal responsibility for the damages following such injury ...

Release, waive, discharge and covenant not to sue NATIONAL HANDICAPPED SPORTS, its affiliated clubs, their representative administrators, directors, agents, coaches, and other employees of the organization, ... all of which are hereinafter referred to as "releases", from demands, losses or damages on account of injury ... caused or alleged to be caused in whole or in part by the negligence of the releasee or otherwise.

I ... HAVE READ THE ABOVE WAIVER AND RELEASE, UNDERSTAND THAT I ... HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT AND SIGN IT VOLUNTARILY.

Here, as in *Jones* and unlike the registrant's release, the agreement uses the word "negligence" twice. This release, like the registrant's release, is written in simple, clear terms that are free of legal jargon. In addition, it is neither long nor complicated. Potter stated in his deposition that there are no terms in this release that he did not understand. Furthermore, this exculpatory agreement specifically addresses the risk that describes the circumstances of Potter's injury. i.e. the negligence of others. Under these circumstances, the liability waiver clearly and unambiguously establishes the parties' intent to extinguish NHS's liability for injuries to Potter arising from NHS's negligent acts. Accordingly, based upon the four *Jones* factors, I conclude, as a matter of law, that the liability waiver is valid and encompasses the claim alleged in this case.

■ To create a genuine issue of material fact, Potter submits an affidavit in which he states that he "never intended nor understood that his signature on any release or waiver waived liability in a case where the injury arises solely out of the negligent conduct of another person". However, Potter's affidavit as to his subjective intent is inadmissible to overcome the parties' overt manifestation of intent in the releases because

the language in these agreements is clear and unambiguous. *Kuta v. Joint Dist. No. 50(J) of Counties of Delta, Gunnison, Mesa and Montrose,* 799 P.2d 379, 381 (Colo.1990) (Extrinsic evidence is only admissible to prove intent where the terms of the contract are ambiguous.)

■ Potter further argues that the releases are inapplicable here where the alleged injury was caused by NHS's volunteer. Potter contends that NHS's failure to denominate "volunteers" as a category for which the release applies is fatal. Even strictly construed, this argument is without merit because a corporation can act only through its officers, directors, agents, and employees. *Shriver v. Baskin–Robbins Ice Cream Company, Inc.,* 145 F.R.D. 112, 114 (D.Colo.1992). Moreover, the liability waiver expressly includes the "negligence of others" and does not limit this negligence to NHS's employees.

■ Potter's final argument is that even if the releases bar claims against NHS for its negligent acts, they are inapplicable here because Potter's claim is based on NHS's willful and wanton negligence. *See Jones,* 623 P.2d at 376 (in no event does an exculpatory agreement shield against a claim for willful and wanton negligence). Colorado differentiates conduct on the basis of negligent or willful and wanton behavior. *Shoemaker v. Mountain States Tel. & Tel. Co.,* 559 P.2d 721, 724 (Colo.App.1976). The latter is defined as a mental state of the actor consonant with purpose, intent, and voluntary choice. *Id.* Mere inattention or inadvertence does not constitute willful and wanton disregard of the right of others. *Johnson v. Salaz,* 509 P.2d 1273, 1275 (Colo.App. 1973).

Potter does not allege in his complaint or in the joint stipulated plan and schedule for discovery that NHS's misconduct rose above the level of simple negligence. Indeed, the only wrongful conduct alleged in Potter's complaint is that a "race official was standing in the finish line." Potter attempts to salvage his claim against NHS by now arguing for the first time that NHS's actions constituted willful and wanton negligence.

Despite Potter's conclusory argument and attempt to dress up his complaint at this late date, I conclude that at most, Potter's allegations are grounded in negligence. *Cf. Apodaca v. Rio Arriba County Sheriff's Department,* 905 F.2d 1445, 1447 (10th Cir.1990). Furthermore, even if Potter had alleged a claim for willful and wanton negligence, the facts in this case are insufficient to support an inference by a reasonable fact finder that the NHS race official acted willfully and wantonly.

Accordingly, it is ORDERED that:

1) NHS's cross-motion for summary judgment is GRANTED;

2) Potter's motion for partial summary judgment is DENIED;

3) Final judgment shall enter in favor of NHS and against Potter; and,

4) NHS is awarded its costs.