Carol LAHEY, Plaintiff,

v.

Rick COVINGTON d/b/a Twin Lakes Expeditions, Inc., and Douglas (Blues) Voisard, Defendants and Third–Party Plaintiffs,

v.

Rob MOBILIAN, Third–Party Defendant.

Civil Action No. 95–N–1396.

United States District Court,
D. Colorado.

April 29, 1996.

---

Ira M. Long, Jr., Roos, Cohen & Long, P.C., Denver, CO, for Rob Mobilian.

James V. Pearson, Pearson, Milligan & Horowitz, P.C., Denver, CO, for Douglas (Blues) Voisard.

William A. Trine, Williams & Trine, P.C., Boulder, CO, for Carol Lahey.

### ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is a personal injury action. Plaintiff Carol Lahey alleges that she suffered serious injuries during a white-water rafting trip as a result of the negligence and willful and wanton conduct of Defendants and Third–Party Plaintiffs Rick Covington d/b/a Twin Lakes Expeditions, Inc., and Douglas (Blues) Voisard [hereinafter "defendants"]. Defendants allege that, pursuant to an indemnity agreement, both plaintiff and Third–Party Defendant Rob Mobilian ("Mobilian") are liable to defendants for any fees and costs they incur in connection with this lawsuit. The matter is before the court on (1) "Third–Party Defendant's Motion for Judgment on the Pleadings" filed November 15, 1995, and (2) "Defendants' and Third–Party Plaintiffs' Motion for Summary Judgment" filed January 19,

1996. Jurisdiction is based on 28 U.S.C.A. § 1332 (West 1993).

## FACTS

At all times relevant to this case, Covington owned and operated Twin Lakes Expeditions, Inc., a white-water rafting company located in Twin Lakes, Colorado. (Defs.' and Third–Party Pls.' Br. in Supp. of Mot. for Summ. J., Statement of Undisputed Material Facts ¶ A [filed Jan. 19, 1996] [hereinafter "Defs.' Summ. J. Br."]; *admitted at* Pl.'s Mem. Br. in Opp'n to Defs.' Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ A [filed Feb. 5, 1996] [hereinafter "Pl.'s Resp. to Summ. J. Mot."]; Mobilian's Br. in Opp'n to Mot. for Summ. J., Resp. to Statement of Undisputed Facts [filed Feb. 9, 1995] [hereinafter "Mobilian's Resp. to Summ. J. Mot."] [incorporating "Pl.'s Resp. to Summ. J. Mot., Resp. to Undisputed Material Facts"].) At all times relevant to this case, Voisard worked for Twin Lakes as a rafting guide. (Defs.' Summ. J. Br., Statement of Undisputed Material Facts ¶ B; *admitted at* Pl.'s Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Material Facts ¶ B; Mobilian's Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Facts.)

At sometime prior to June 1, 1993, Mobilian scheduled a white-water rafting trip for himself and his family with Covington and Twin Lakes. (Defs.' Summ. J. Br., Statement of Undisputed Material Facts ¶ C; *admitted at* Pl.'s Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Material Facts ¶ C; Mobilian's Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Facts.) Mobilian is plaintiff's brother. (*See* Answer, Countercl. and Third–Party Compl. ¶ 15 [filed Sept. 15, 1995]; Am. Answer to Third–Party Compl. ¶ 3 [filed Nov. 7, 1995].) On the morning of June 1, 1993, plaintiff, Mobilian, and family members arrived at Twin Lakes for the purpose of taking a white-water rafting trip. (*See* Pl.'s Resp. to Summ. J. Mot., Ex. A [Mobilian Dep. at 15–16].)

At the Twin Lakes office, plaintiff and Mobilian signed identical release agreements. (*See* Defs.' Summ. J. Br., Exs. A [copy of release signed by plaintiff], B [copy of release signed by Mobilian].) Plaintiff did not read the release before she signed it. (Pl.'s Resp. to Summ. J. Mot. at 18.) The releases provided:

I recognize that there is a significant element of risk in whitewater rafting or any adventure expedition, sport or activity associated with the outdoors which I have voluntarily applied to participate in.

I fully understand that any activity associated with Twin Lakes Expeditions may include hazards and exposures connected in the outdoors which do involve risk and that I am aware of the risks and dangers inherent with the activities that I and/or my family, including any minor children, are involved in. I am mentally and physically capable of participating in the activities contracted for and willingly assume the risk of injury as my responsibility, including loss of control, collisions with other participants, trees, rocks, and other man made or natural obstacles, whether they are obvious or not obvious.

. . . .

As lawful consideration for being permitted by Twin Lakes Expeditions to participate in the activities involved, the undersigned, for himself and/or his heirs and assigns, hereby releases the State of Colorado, Bureau of Land Management, Twin Lakes Expeditions and employees of Twin Lakes Expeditions from any liability for claims or lawsuits brought by the undersigned and arising out of the activities provided by the concessioner.

I agree to defend, indemnify and hold harmless Twin Lakes Expeditions, the United States Forest Service and Parks Department, and all State or Government agencies, and private property [sic] the activities may be conducted on, and all of their officers, members, affiliated organizations, agents and employees for any injury or death caused by or resulting from me or my family's participation in the activities associated with Twin Lakes Expeditions both scheduled and unscheduled whether or not such injury or death was caused by their negligence or from any other causes.

I assume complete and full responsibility for my family and myself, including any minor children, for bodily injury, loss of

life, loss of personal property and expenses thereof.

I have carefully read the agreement, fully understand and accept the terms and conditions explained and stated herein and acknowledge that this release shall be effective and legally binding upon me, my heirs, my estate, assigns[,] legal guardians and my personal representatives during the entire period of participation in the activities.

DO NOT SIGN THE RELEASE IF YOU DO NOT UNDERSTAND OR DO NOT AGREE WITH ITS TERMS.

(*Id.*)

After signing the releases, plaintiff, Mobilian, and the others embarked on a white-water rafting trip. (*See* Pl.'s Resp. to Summ. J. Mot., Ex. A [Mobilian Dep. at 21].) They went to the "Numbers" section of the Arkansas River. (*See* Am. Compl. in Tort for Damages ¶ 10 [filed Aug. 24, 1995] [hereinafter "Am. Compl."]; Answer, Countercl. and Third–Party Compl. ¶ 10 [filed Sept. 15, 1995].) Plaintiff testified that, at the time of the trip, she understood that she faced the following risks: (1) she might fall into the river; (2) she might be swept away from her raft; (3) she might strike rocks in the river; and (4) she could be injured. (Defs.' Summ. J. Br., Statement of Undisputed Material Facts ¶ F; *admitted at* Pl.'s Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Material Facts ¶ F; Mobilian's Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Facts.).

Covington testified that, on June 1, 1993, "Numbers" were a Class IV–plus set of rapids. (Pl.'s Resp. to Summ. J. Mot., Ex. D [Covington Dep. at 128 11. 16–18].) He described the condition of the river as "high" but not "any more challenging that day than any other day." (*Id.*, Ex. D [Covington Dep. at 136 11. 6–11].) On June 1, 1993, the water flow at the "Numbers" measured 3.8 feet high on the Scott's Bridge Gauge. (Defs.' Summ. J. Br., Statement of Undisputed Material Facts ¶ L; *admitted at* Pl.'s Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Material Facts ¶ L; Mobilian's Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Facts.) The Arkansas Headwa-

ter Recreation Area, apparently a white-water rafting regulatory group, recommends against commercial rafting through the "Numbers" when the water flow measures 4.0 feet high or more on the Scott's Bridge Gauge. (Summ. J. Br., Statement of Undisputed Material Facts ¶ M; *admitted at* Pl.'s Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Material Facts ¶ M; Mobilian's Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Facts.) Covington testified that his company policy was not to take people rafting through the "Numbers" if the water was four feet high or more. (*See* Defs.' Summ. J. Br., Ex. H [Covington Dep. at 160 1. 23 to 161 1. 7]; Pl.'s Resp. to Summ. J. Mot., Ex. D [Covington Dep. at 169 11. 4].) He explained that "anything up to [four] feet . . . was certainly not only acceptable, but a fine rafting level, exciting, and a guide's favorite, if you want to put it that way." (*See* Defs.' Summ. J. Br., Ex. H [Covington Dep. at 161 11. 4–7].)

During the trip, plaintiff was in a raft guided by Voisard. (Defs.' Summ. J. Br., Statement of Undisputed Material Facts ¶ K; *admitted at* Pl.'s Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Material Facts ¶ K; Mobilian's Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Facts.) As plaintiff's raft entered "rapid number 4," Voisard was thrown out of the raft. (Defs.' Summ. J. Br., Statement of Undisputed Material Facts ¶ N; *admitted at* Pl.'s Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Material Facts ¶ N; Mobilian's Resp. to Summ. J. Mot., Resp. to Statement of Undisputed Facts.) Shortly thereafter, the raft capsized, tossing plaintiff into the river. (*Id.*) Plaintiff maintains that, as she was swept through the rapids, she incurred multiple injuries and, as a result, has had to undergo surgery and physical therapy. (Am. Compl. ¶ 29.)

On May 31, 1995, plaintiff filed a complaint against defendants in this court, alleging that defendants were liable for (1) negligence and (2) willful and wanton conduct. (*See* Compl. [filed May 31, 1995].) On August 24, 1995, plaintiff filed an amended complaint, in which she corrected her allegation regarding Covington's residence. (*See* Am. Compl.)

On September 15, 1995, defendants filed an answer to the amended complaint, a counter-claim against plaintiff, and a third-party complaint against Mobilian. (*See* Answer, Countercl. and Third–Party Compl.) In their counterclaim, defendants assert that, according to the terms of the release agreement, plaintiff is obligated to indemnify defendants for "all of their damages, attorneys' fees, costs and other expenses incurred as a result of" her participation in the June 1, 1993, rafting trip. (*See id.* at 7–8.) Similarly in their third-party claim against Mobilian, defendants assert that, according to the terms of the release agreement, Mobilian must indemnify defendants for all of the fees and costs they incur in connection with this lawsuit.

The motions currently before the court present the following three issues: (1) whether the release agreement bars plaintiff's negligence claims; (2) whether plaintiff has presented evidence that defendants acted willfully and wantonly; (3) whether, by signing the release agreement, plaintiff and Mobilian agreed to indemnify defendants for their expenses in connection with this lawsuit. In his motion for judgment on the pleadings, Mobilian argues that the release agreement is unclear and ambiguous and counter to public policy and, thus, does not obligate him to indemnify defendants. In their motion for summary judgment, defendants maintain that: (1) plaintiff's negligence claims are barred by the release agreement; (2) plaintiff has not presented evidence that defendants acted wilfully and wantonly in taking her on the rafting trip; and (3) Mobilian is obligated to indemnify defendants for their expenses in connection with this lawsuit. I begin with the issues raised in defendants' motion for summary judgment.

## ANALYSIS

### 1. *Defendants' Motion for Summary Judgment*

#### a. *Legal Standard*

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994), *cert. denied*, 514 U.S. 1004, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553, *see* Fed.R.Civ.P. 56(e). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.), *cert. denied*, 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985). Additionally, the factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990]).

#### b. *Negligence*

Colorado law disfavors exculpatory agreements such as the release agreement at issue here. *See Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 783 (Colo.1989) (en banc). Thus, they are strictly construed against the drafter. *Anderson v. Eby*, 998 F.2d 858, 861 (10th Cir.1993) (quoting *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981) [en banc]); *Potter v. National Handicapped Sports*, 849 F.Supp. 1407, 1409 (D.Colo.1994). Nevertheless, an exculpatory agreement is "not necessarily void ... as long as one party

is not 'at such obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence.'" *Heil Valley Ranch, Inc.,* 784 P.2d at 784 (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 68, at 482 [5th ed.1984].) The release agreement at issue here is not the sort where one party is at so great a disadvantage as to render the agreement void. *See Jones,* 623 P.2d at 374–75.

▪ In determining whether an exculpatory agreement is valid, the court must consider the following four factors: " '(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language.'" *Id.* at 784 (quoting *Jones,* 623 P.2d at 376). Whether an exculpatory agreement is valid is a question of law for the court. *Jones,* 623 P.2d at 376; *Potter,* 849 F.Supp. at 1409. "[F]or an exculpatory agreement to fail under the first factor, the party seeking exculpation must be engaged in providing a service of great importance to the public, which is often a matter of practical necessity for some members of the public." *Potter,* 849 F.Supp. at 1409. Such is not the case here. As in *Potter,* the activity at issue—white-water rafting—is recreational in nature. Thus, "by definition and common sense, it is neither a matter of great public importance nor a matter of practical necessity." *Id.* (citing *Bauer v. Aspen Highlands Skiing Corp.,* 788 F.Supp. 472, 474 (D. Colo. 1992) ).

The second factor, "the nature of the activity," involves an assessment of whether the activity can be described as an "essential service." *See Potter,* 849 F.Supp. at 1410; *Jones,* 784 P.2d at 784. Clearly white-water rafting is neither. *See Potter,* 849 F.Supp. at 1409. Regarding the third factor, plaintiff testified that she does not feel that she was treated unfairly by Twin Lake's requirement that she sign the release form before going on the rafting trip. (Def.'s Summ. J. Br., Ex.

G [Pl.'s Dep. at 131 1.23 to 132 1.1].) Because plaintiff has presented no evidence which contradicts her testimony, I conclude that she entered into the release fairly. Thus, only the fourth factor, whether the terms of the exculpatory agreement are clear and unambiguous, remains to be considered.

The release agreement in this case is short (just over one page), written in simple, clear terms, free of legal jargon, and uncomplicated. Thus, under the standard expressed in *Heil Valley Ranch, Inc.,* it appears to be clear and unambiguous. *See Heil Valley Ranch, Inc.,* 784 P.2d at 785; *see also Potter,* 849 F.Supp. at 1410. Plaintiff maintains, however, that the agreement is not clear because, even if she had read it,[1] it would not have fully apprised her of the risks she would encounter on the rafting trip. Specifically, plaintiff complains that the release did not inform her of the following: (1) she would not be given an opportunity to observe "rapid number 4" before proceeding through it; (2) she would not be given an opportunity to determine what risks were inherent in "rapid number 4" before proceeding through it; (3) she would not be given an opportunity to walk around "rapid number 4" instead of rafting through it; and (4) Voisard could fall out of the raft and, consequently, be unable to direct and navigate the raft. (*See* Pl.'s Resp. to Summ. J. Mot. at 16.)

▪ Colorado law does not require that an exculpatory agreement describe in detail each specific risk that the signor might encounter. *See Heil Valley Ranch, Inc.,* 784 P.2d at 785; *see also Potter,* 849 F.Supp. at 1410–11. Rather, an exculpatory agreement bars a claim if the agreement clearly reflects the parties' intent to extinguish liability for that type of claim. *See id.* Plaintiff asserts that the above-listed risks of which she allegedly was not informed were the product of defendants' negligence. (Pl.'s Resp. to Summ. J. Mot. at 16.) The release agreement states in plain language, however, that plaintiff agreed to "hold harmless Twin Lakes Expeditions ... and all of [its] officers ... and employees for any injury ... *wheth-*

---

1. Even though plaintiff did not read the agreement before signing it, she is nevertheless bound by its terms since there is no evidence that she was fraudulently induced to sign it. *See Day v. Snowmass Stables, Inc.,* 810 F.Supp. 289, 294 (D.Colo.1993).

er or not such injury ... was caused by their negligence ...." (Defs.' Summ. J. Br., Ex. A [copy of release agreement signed by plaintiff] [emphasis supplied].) Thus, the exculpatory agreement clearly reflects an intent to preclude claims based on defendants' negligence. *See Potter,* 849 F.Supp. at 1411.

I conclude that the exculpatory portion of the release agreement is valid as a matter of law. *See Heil Valley Ranch, Inc.,* 784 P.2d at 784; *Jones,* 623 P.2d at 378; *see also Anderson,* 998 F.2d at 861–62; *Potter,* 849 F.Supp. at 1410. Consequently, it bars plaintiff's claims to the extent that they are based on defendants' alleged negligence. *See id.* Accordingly, defendants are entitled to summary judgment on plaintiff's negligence claims. *See id.*

### c. Willful and Wanton Conduct

 In Colorado, "willful and wanton conduct" is conduct which an actor realizes is highly hazardous and poses a strong probability of injury to another but nevertheless knowingly and voluntarily chooses to engage in. *See Steeves v. Smiley,* 144 Colo. 5, 354 P.2d 1011, 1013–14 (1960); *Hodges v. Ladd,* 143 Colo. 143, 352 P.2d 660, 663 (1960) (en banc); Colo.Rev.Stat. § 13–21–102(1)(b) (1987) (concerning exemplary damages). Here, plaintiff claims that defendants are liable for willful and wanton conduct because they concealed from her the fact that the risks she would face on the rafting trip were greater that those usually involved in white-water rafting. (*See* Pl.'s Resp. to Summ. J. Br. at 13–14.) She maintains that "[d]efendants knew that the ['Numbers'] stretch of the river was extremely dangerous and that only skilled and experienced rafters could safely maneuver the rapids." (*See id.* at 13.)

 Plaintiff's claim, however, is wholly unsupported by the record. Plaintiff presents no evidence that defendants *knew* that the risks posed by rafting through the "Numbers" were greater than usual for the sport of white-water rafting, let alone any evidence that the risks *were, in fact,* greater. To the contrary, Covington's uncontroverted testimony is that the river's water-height on the day of plaintiff's trip was appropriate for rafting according to industry standards as well as his company policy, and that the "Numbers" was not any more dangerous on June 1, 1993, than on any other day. (*See* Def's Summ. J. Br., Ex. H [Covington Dep. at 160 1.21 to 164 1.25]; Pl.'s Resp. to Summ. J. Mot., Ex. D [Covington Dep. at 136 11. 6–12].) Plaintiff has introduced nothing to suggest that defendants did not believe that, in taking plaintiff on the rafting trip, they were acting (1) in conformance with industry standards, (2) in conformance with their company standards, and (3) in what they knew to be a reasonably safe manner, given the nature of white-water rafting. Thus, because plaintiff has failed to introduce evidence that defendants' conduct rises to the level of willful and wanton, I conclude that defendants are entitled to summary judgment on that claim. *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554).

### d. Indemnity

As indicated above, defendants maintain that, by signing the release agreement, plaintiff agreed to indemnify them for their attorneys' fees and other expenses incurred in connection with this lawsuit. Similarly, defendants argue that, because Mobilian is plaintiff's brother, the indemnity clause in the release agreement obligates him to indemnify defendants for any costs they incur in connection with this lawsuit, including attorneys' fees and costs.

 In general, indemnity agreements, like exculpatory agreements, are strictly construed under Colorado law. *Public Serv. Co. of Colo. v. United Cable Television of Jeffco, Inc.,* 829 P.2d 1280, 1284 (Colo. 1992) (en banc). For an indemnity agreement to be enforceable, it must contain clear and unequivocal language which manifests the parties' intent that the indemnitee be indemnified for the expenses at issue. *See id.; Williams v. White Mountain Constr. Co., Inc.,* 749 P.2d 423, 426 (Colo.1988) (en banc).

 Here, the relevant language provides, "I agree to ... indemnify [defendants] ... for any injury or death caused by or resulting from me or my family's partic-

ipation [in the rafting activity]." (Defs.' Summ. J. Br., Exs. A [copy of release signed by plaintiff], B [copy of release signed by Mobilian].) That language does not *clearly and unequivocally* state that the signor agrees to pay the attorney's fees and costs associated with a lawsuit such as this. In fact, it seems more likely that the clause means that the signor agrees to pay expenses such as medical bills which result from her or her family member's physical injury during a rafting trip. Further, with respect to defendant's claim against Mobilian, the term "family" is not clearly and unequivocally broad enough to encompass the signor's adult sister as opposed to only the signor's spouse and children. Thus, I conclude that the language of the indemnity clause does not obligate plaintiff or Mobilian to indemnify defendants for the attorneys' fees and other expenses they incur in connection with this lawsuit. *See Public Serv. Co. of Colo.,* 829 P.2d at 1284; *Williams,* 749 P.2d at 426. Accordingly, defendants' summary judgment motion is denied on the issue of plaintiff's and Mobilian's indemnity obligations. I need not reach the parties' further arguments on that issue.

## 2. Mobilian's Motion for Judgment on the Pleadings

As indicated above, Mobilian moves for judgment on the pleadings with respect to his obligation to indemnify defendants for their attorneys' fees and other expenses incurred in connection with this lawsuit. A motion for judgment on the pleadings is a motion to dismiss that is filed after the pleadings are closed. Fed.R.Civ.P. 12(c); 2A James W. Moore, *Moore's Federal Practice* ¶ 12.15 (2d ed.1995). The standard of review for such a motion is as follows:

> For purposes of the motion, all well-pleaded material allegations of the non-moving party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false. Conclusions of law are not deemed admitted. On the basis of the facts so admitted, the court may grant judgment only if the moving party is clearly entitled to judgment.

2A Moore ¶ 12.15; *Hamilton v. Cunningham,* 880 F.Supp. 1407, 1410 (D.Colo.1995).

I therefore accept as true all allegations set forth by defendants. *See id.* "A judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 670 (9th Cir. 1993) (citation omitted).

Here, for the reasons explained in the previous section, I conclude as a matter of law that Mobilian is not obligated to indemnify defendants for their expenses in connection with this lawsuit. Accordingly, Mobilian's motion for judgment on the pleadings is granted.

## 3. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

1. Mobilian's motion for judgment on the pleadings is GRANTED.

2. Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

3. Defendants' motion for summary judgment is GRANTED with respect to plaintiff's claims of negligence and willful and wanton conduct.

4. Defendants' motion for summary judgment is DENIED with respect to defendants' claim that plaintiff and Mobilian are obligated to indemnify defendants for their attorneys' fees and other costs incurred in connection with this lawsuit.

5. Defendants' third-party claim is hereby dismissed.

## ORDER

This is a personal-injury action. On April 26, 1996, the court: (1) granted former Third–Party Defendant Rob Mobilian's motion for judgment on the pleadings with respect to defendants' third-party claim for indemnity; (2) granted defendants' motion for summary judgment with respect to plaintiff's claims of negligence and willful and wanton conduct; and (3) denied defendants' motion for summary judgment with respect to defendants' counterclaim that plaintiff is obligated to indemnify defendants for their attorneys' fees and other costs incurred in connection with this lawsuit and with respect

to defendants' third-party claim that Mobilian is similarly obligated to indemnify them. The matter is now before the court on "Plaintiff's Motion for Judgment on the Pleadings Re: Defendants' Counterclaim" filed April 30, 1996. The facts of the case are discussed in my Order and Memorandum of Decision, filed April 29, 1996, and need not be repeated here.

As explained in my April 29, 1996, order and memorandum of decision, the indemnity clause at issue does not clearly and unequivocally state that the signor agrees to pay the attorney's fees and costs associated with a lawsuit such as this. (*See* Order and Mem. of Decision at 12 [filed Apr. 29, 1996].) Thus, for substantially the same reasons I granted Mobilian's motion for judgment on the pleadings, I grant plaintiff's motion for judgment on the pleadings. (*See id.* at 12–14.) It is therefore

ORDERED as follows:

1. Plaintiff's motion for judgment on the pleadings is GRANTED.

2. Defendants' counterclaim is hereby dismissed.

3. This case is hereby dismissed.