**F I L E D**
United States Court of Appeals
Tenth Circuit

**OCT 30 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MARTHA M. BROOKS and
D. GREGORY BROOKS,

       Plaintiffs - Appellants,

v.

TIMBERLINE TOURS, INC., a Colorado
Corporation, a/k/a Timberline Tours, Inc.,
d/b/a Kelchner Enterprises, Inc.;
GREGORY A. KELCHNER, d/b/a
Timberline Tours, Inc.; TED A.
KELESKE; and MICHAEL A. VAN
LUVEN,

       Defendants - Appellees.

No. 96-1500

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 95-B-115)**

_____

Cuba Y. Hollaway (Gerald R. Blixt with him on the briefs) of Bennett and Hollaway,
Colorado Springs, Colorado, for Plaintiffs-Appellants.

R. Eric Peterson (John M. Lebsack with him on the brief) of White and Steele, P. C.,
Denver, Colorado, for Defendants-Appellees.

_____

Before **SEYMOUR**, Chief Judge, **McKAY** and **HENRY**, Circuit Judges.

**McKAY**, Circuit Judge.

_____

Plaintiff, Mrs. Martha Brooks, was injured and her minor son was killed in a snowmobile accident while participating in a snowmobile tour conducted by Defendant Timberline Tours, Inc. Mrs. Brooks and her husband filed a diversity suit against Timberline Tours, Inc. and the other Defendants in the United States District Court for the District of Colorado. Plaintiffs alleged that the negligence of Defendants caused the accident in which their son drove off the trail and over an embankment with his mother as a passenger. The district court granted summary judgment to Defendants on the basis of a release agreement that the Brooks family signed before starting the tour which stated, in pertinent part:

### RELEASE, ACCEPTANCE OF RESPONSIBILITY AND ACKNOWLEDGEMENT OF RISKS

ACKNOWLEDGEMENT OF RISKS - I understand and acknowledge that the activity I am about to voluntarily engage in bears certain known risks and unanticipated risks which could result in injury, death or damage to myself, to my property or to other third parties. I understand and acknowledge those risks may result in personal claims against Timberline Tours, Inc., . . . .

. . . .

RELEASE - I hereby voluntarily release Timberline Tours, Inc., . . . their agents or employees, and all other persons or entities from any and all liability, claims, demands, actions or rights of action, which are related to or

2

are in any way connected with my participation in this activity, including specifically but not limited to the negligent acts or omissions of Timberline Tours, Inc, [sic] . . . their agents or employees, and all other persons or entities, for any and all injury, death and damage to myself or to my property.

. . . .

I further agree, promise and covenant not to sue, assert or otherwise maintain or assert any claim against Timberline Tours, Inc., . . . their agents or employees, and all other persons or entities, for any injury, death or damage to myself or to my property, arising from or connected with my participation in this activity . . . . IN SIGNING THIS DOCUMENT, I FULLY RECOGNIZE THAT IF ANYONE IS HURT OR PROPERTY IS DAMAGED WHILE I AM ENGAGED IN THIS EVENT, I WILL HAVE NO RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST TIMBERLINE TOURS, INC., . . . OR THEIR OFFICERS, AGENTS, OR EMPLOYEES, EVEN IF THEY OR ANY OF THEM NEGLIGENTLY CAUSED THE BODILY INJURY OR PROPERTY DAMAGE.

R., Vol. II at 86-88. Plaintiffs appeal the district court's summary adjudication of their claims. For the reasons stated herein, we affirm.

Whether an exculpatory release is valid is a question of law for the court to determine. Jones v. Dressel, 623 P.2d 370, 376 (Colo. 1981). Therefore, the validity of an exculpatory release is an appropriate issue for summary adjudication. A court must consider four factors when determining the validity of an exculpatory agreement: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language. Id. The parties agree that only the fourth Jones factor, the clarity of the language, is at issue in this appeal.

3

Under the standard expressed by the Colorado Supreme Court in Heil Valley Ranch, Inc. v. Simkin, 784 P.2d 781, 785 (Colo. 1989), the release agreement in this case is clear and unambiguous. The release provisions are written in simple, clear terms that are free from legal jargon. The release is not inordinately long or complicated, and the capitalization of the third paragraph of the release highlights the importance of the information it contains. When the agreement was read to Plaintiffs at their depositions, they both indicated that they understood it.[1] R., Vol. II at 71, 74, 97-98. The agreement articulates a risk of injury or death and states that the signor bears that risk of injury or death "even if [Timberline Tours or its employees] negligently caused the bodily injury."[2]

---

[1] Attempting to create an issue of fact concerning the release agreement's clarity, Plaintiffs state that at the time they signed the release they did not believe they could waive the Defendants' negligence by signing, despite the explicit language in the release agreement. Appellants' Brief at 35. However, Plaintiffs' "subjective intent is inadmissible to overcome the parties' overt manifestation of intent in the releases because the language in these agreements is clear and unambiguous." Potter v. National Handicapped Sports, 849 F. Supp. 1407, 1411 (D. Colo. 1994); Kuta v. Joint Dist. No. 50(J) of Delta, Gunnison, Mesa and Montrose, 799 P.2d 379, 382 (Colo. 1990) ("Extrinsic evidence is only admissible to prove intent where the terms of the contract are ambiguous."); Anderson v. Eby, 998 F.2d 858, 863 & n.1 (10th Cir. 1993).

[2] Colorado law is unsettled about how specific the articulation of the risks included in a release must be. Compare Lahey v. Covington, 964 F. Supp. 1440, 1445-46 (D. Colo. 1996) ("Colorado law does not require that an exculpatory agreement describe in detail each specific risk that the signor might encounter. . . . Plaintiff asserts that the above-listed risks of which she allegedly was not informed were the product of defendants' negligence. . . . [P]laintiff agreed to 'hold harmless Twin Lakes Expeditions . . . and [its] employees for any injury . . . *whether or not such injury . . . was caused by their negligence . . . .*' Thus, the exculpatory agreement clearly reflects an intent to preclude claims based on defendants' negligence.") (alteration in original) (citations omitted), and Potter, 849 F. Supp. at 1411 ("this exculpatory agreement specifically addresses the risk that describes the circumstances of [plaintiff's] injury. [sic] i.e. the

4

R., Vol. II at 86-88.  After considering the factors mentioned in Heil Valley Ranch, we must join the district court in its affirmative answer to the central inquiry under Colorado law:  In this case, the "intent of the parties was to extinguish liability and . . . this intent was clearly and unambiguously expressed."  Heil Valley Ranch, 784 P.2d at 785 (citation omitted).

Plaintiffs attempt to repackage their negligence claims that were waived by the release agreement into a breach of contract claim.  From an advertising brochure, a guide manual, and Timberline Tours' agreement with the owner of the toured land, Plaintiffs try to construct a list of detailed agreements between themselves and Defendants that they

---

negligence of others"), with Del Bosco v. United States Ski Ass'n, 839 F. Supp. 1470, 1474 (D. Colo. 1993) (finding release provision did not "specifically address a risk that describes the circumstances of [plaintiff's] injury and the exculpatory language [was] extremely broad").

There is also some dispute in the Colorado case law about whether a plaintiff's experience or lack of experience should be considered when determining the ambiguity of a release.  Compare Day v. Snowmass Stables, Inc., 810 F. Supp. 289, 295 (D. Colo. 1993) (interpreting Heil Valley Ranch, 784 P.2d at 785, to require consideration of plaintiff's experience), with Anderson, 998 F.2d at 862 (plaintiff's experience is irrelevant to interpreting an exculpatory waiver).  We express no opinion on whether a plaintiff's experience should be considered nor on how specifically a release should articulate the risks covered.  We only hold (1) that in this case where the release stated that snowmobiling did entail risks that could result in injury or death, and Mrs. Brooks herself acknowledged that at the time of the trip she understood that she faced a risk of a snowmobile crash, R., Vol. II at 71, the risk of the unfortunate injury to the Brooks family was sufficiently obvious; and (2) that whether or not the Brooks family's experience is considered in this case, after considering all of the relevant factors, the intention of the parties to extinguish liability was expressed in clear and unambiguous language in this release agreement.  See Heil Valley Ranch, 784 P.2d at 785.

5

claim Defendants breached. Plaintiffs further insist that the alleged breach of this contract released them from their express agreement to waive their claims. Plaintiffs' breach of contract argument does not provide them with relief because an integration clause in the written exculpatory agreement prevents them from presenting extrinsic evidence to prove the existence of their alleged prior agreements. Nelson v. Elway, 908 P.2d 102, 107 (Colo. 1995).

The last full paragraph in the written release agreement at issue in this case provides: "I understand that this is the entire Agreement between myself and Timberline Tours, Inc., . . . their agents or employees, and that it cannot be modified or changed in any way by the representations or statements of any employee or agent of Timberline Tours, Inc., . . . or by me." R., Vol. II at 86-88. This clause clearly "limit[s] future contractual disputes to issues relating to the express provisions of the contract" signed by the Plaintiffs immediately before the snowmobile tour. Nelson, 908 P.2d at 107 (citing Keller v. A.O. Smith Harvestore Prods., Inc., 819 P.2d 69, 72 (Colo. 1991) (en banc)). Plaintiffs cannot construct additional contractual obligations through the extrinsic materials they have attempted to present. The written, completely integrated agreement between the parties was not breached by Defendants, and Plaintiffs are bound by their agreement to waive their claims against Defendants.

Despite the validity and enforceability of the release agreement, Plaintiffs make several arguments for the survival of some of their claims. They assert that according to

6

Barker v. Colorado Region-Sports Car Club of America, Inc., 532 P.2d 372 (Colo. App. 1974), their collateral source claims and wrongful death claims are not covered by the release agreements they signed. However, the Barker decision that a husband's exculpatory release does not bar his wife's claim for lack of consortium has no application to the present case. Id. at 378. In this case, both Mr. and Mrs. Brooks signed copies of the agreement releasing Timberline Tours and its employees of all claims, and Mr. Brooks signed a copy of the agreement on behalf of his son. In contrast, the Barker spouse-plaintiff had not made any release agreement with the defendants. Barker is inapplicable to this case. The collateral source claims and wrongful death claims are governed by the release agreement.

Plaintiffs also bring a claim of negligent misrepresentation against Defendants, suggesting that Keller v. A.O. Smith Harvestore stands for the proposition that a claim of negligent misrepresentation cannot be waived by an exculpatory agreement. Keller does not hold that negligent misrepresentation claims cannot be waived by an exculpatory agreement. Keller only holds that "the mere presence of a general integration clause in an agreement does not bar a claim for negligent . . . misrepresentation." Keller, 819 P.2d at 73 (citations omitted). A negligent misrepresentation claim can still be barred by an exculpatory agreement prohibiting such tort claims. Under the Keller reasoning, although the integration clause in the disputed agreement does not bar Plaintiffs' negligent misrepresentation claims, the release provision does bar their claims.

7

Plaintiffs' final argument is that the conduct of Defendants rose to the level of willful and wanton negligence. In Colorado, willful and wanton behavior requires "a mental state of the actor consonant with purpose, intent, and voluntary choice." Potter, 849 F. Supp. at 1411 (citation omitted). It is "conduct which an actor realizes is highly hazardous and poses a strong probability of injury to another but nevertheless knowingly and voluntarily chooses to engage in." Lahey, 964 F. Supp. at 1446; Steeves v. Smiley, 354 P.2d 1011, 1013-14 (Colo. 1960).

If Plaintiffs had succeeded in creating a genuine issue of material fact as to the willful and wanton negligence of Timberline Tours and its employees, the release agreement would not shield Defendants from such a claim. Jones, 623 P.2d at 376. However, they failed to present sufficient evidence for a reasonable fact finder to conclude that Defendants acted willfully and wantonly. We affirm the district court's grant of summary judgment on that claim.

The judgment of the United States District Court for the District of Colorado is **AFFIRMED**.